**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER T. KULA,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF CHICAGO, an Illinois municipal corporation; and the following individuals, each in an individual capacity: Officer JESSE BRITO, Star No. 11892; Officer RENE SALDANA, Star No. 15720; Officer ALEXANDRA PINEDA, Star No. 14247; Officer LUZ B. PINA, Star No. 13882; Officer ROGER P. BOURDEAU, Star No. 3225; Officer WILBUR T. CALICDAN, Star No. 18374; Sergeant CHRIS J. BANE, Star No. 918; Sergeant SALVADOR SERRANO JR., Star No. 827; Sergeant ZAYA MIKHAIL, Star No. 1890; Sergeant MARGARET FLISK, Star No. 2682; Sergeant DANIELLE A. WAHRER, Star No. 13454; Bus. Compliance Manager JOSEPH SNEED, Star No. 114; Bus. Compliance Sup. DANIEL RODRIGUEZ, Star No. 345; Bus. Compliance Invest. CESAR RAVELO, Star No. 383; and UNKNOWN OFFICERS of the Chicago Police Department,<br><br>*Defendants*. | Case No.: 1:26-cv-9879<br><br>**JURY TRIAL DEMANDED** |

**<u>VERIFIED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND RETURN OF SEIZED PROPERTY</u>**

**NOW COMES** the Plaintiff, CHRISTOPHER T. KULA (hereinafter referred to as the "Plaintiff"), by and through his attorneys, CHIRICA LAW OFFICE LLC, and hereby complains of Defendants, the CITY OF CHICAGO, an Illinois municipal corporation (hereinafter referred to as the "City"); Chicago Police Department (hereinafter referred to as "CPD") Officer JESSE BRITO, Star No. 11892; CPD Officer RENE SALDANA, Star No. 15720; CPD Officer ALEXANDRA PINEDA, Star No. 14247; CPD Officer LUZ B. PINA, Star No. 13882; CPD Officer ROGER P. BOURDEAU, Star No. 3225; CPD Officer WILBUR T. CALICDAN, Star No. 18374; CPD Sergeant CHRIS J. BANE, Star

No. 918; CPD Sergeant SALVADOR SERRANO JR., Star No. 827; CPD Sergeant ZAYA MIKHAIL, Star No. 1890; CPD Sergeant MARGARET FLISK, Star No. 2682; CPD Sergeant DANIELLE A. WAHRER, Star No. 13454; City of Chicago Department of Business Affairs and Consumer Protection (hereinafter referred to as "BACP") Business Compliance Manager JOSEPH SNEED, Star No. 114; BACP Business Compliance Supervisor DANIEL RODRIGUEZ, Star No. 345; BACP Business Compliance Investigator CESAR RAVELO, Star No. 383; and UNKNOWN OFFICERS of the Chicago Police Department, each of the individual Defendants being sued in an individual capacity (the City, CPD officers, and BACP officers are hereinafter collectively referred to herein as the "Defendants"). In support thereof, Plaintiff hereby alleges as follows:

## INTRODUCTION

1. This is an action under 42 U.S.C. § 1983 for the warrantless seizure and continued retention of the Plaintiff's property by CPD Officers without any lawful basis. Twice in the span of seven months, CPD officers and BACP investigators unlawfully seized Plaintiff's professional audio equipment without a warrant, without any arrest, without any charge(s) against him, and without any probable cause to believe the equipment was evidence of any cognizable criminal offense. On nearly a dozen occasions, Defendants refused to return it.

2. The first seizure occurred on November 16, 2025. The administrative citations that followed were resolved months ago: two respondents settled, and the City voluntarily dismissed every count against the third. On March 10, 2026, the City's own Department of Administrative Hearings entered an order, effective *nunc pro tunc* to January 2, 2026, confirming that the seized property may be released unless some other law, court order, or warrant authorizes a continued hold. No such law, order, or warrant exists. The equipment sits in a CPD warehouse because the officer who seized it will not clear an "investigative hold" on an investigation that does not exist.

3. The second seizure occurred on May 30, 2026. Officers and a City compliance manager again took Mr. KULA's equipment without a warrant and without an arrest, tearing the connecting cables out of the mixer as they went. When offered information about the equipment, the manager answered that he did not "need any information." The inventory forms are captioned "ARRESTEE INFORMATION" and direct that the copy be given "TO ARRESTEE." See inventory records attached hereto as Exhibit 1.

4. No one was arrested.

5. No arrest, charge, citation, or administrative proceeding has ever been brought against Mr. KULA by the City in connection with either event. The only document ever directed to him was a mailed *Notice of Violation* that commenced no proceeding and imposed no penalty.

6. A third seizure occurred on August 16, 2026. CPD officers assigned to the 9th District again took Mr. KULA's equipment, this time by impounding the two trucks into which it had been loaded, and this time without preparing or tendering any inventory receipts at all. The equipment taken that night is described in the schedule attached hereto as Exhibit 2. Mr. KULA was arrested and charged with "criminal trespass to real property," but he asserts no claim in this Complaint arising from that arrest.

7. Mr. KULA earns his living renting this equipment. The City now holds approximately $70,000 of his inventory, and has held the first set for approximately 275 days. Every avenue the City itself prescribed has been exhausted: he appeared where CPD told him to appear, obtained the order CPD said he needed, and presented it. The property remains where it was.

8. Mr. KULA seeks the return of his property, compensation for its taking and for the loss of its use, and an end to a municipal practice that treats the return of a citizen's property as a matter of police grace rather than of law.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), because the claims arise under the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a), because they form part of the same case or controversy. The Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because all of the events giving rise to these claims occurred in Chicago, Illinois.

11. Venue is also proper under 28 U.S.C. § 1391(b)(1). The City resides in this district, and, on information and belief, each individual Defendant resides in this district as well, because the City requires its officers and employees to be actual residents of the City. Municipal Code of Chicago § 2-152-050.

## THE PARTIES

12. Plaintiff CHRISTOPHER T. KULA is a resident of Cook County, Illinois. He owns and rents out professional disc-jockey and audio equipment, including digital media players, mixers, controllers, and related hardware.

13. Defendant CITY OF CHICAGO is an Illinois municipal corporation. CPD and BACP are departments of the City, and the City is responsible for their policies, practices, and customs. At all relevant times, the individual Defendants acted under color of law and within the scope of their employment by the City.

14. Defendant JESSE BRITO, Star No. 11892, was at all relevant times a CPD officer assigned to the 12th District. Upon information and belief, he remains so employed. He is sued in his individual capacity.

15. Defendant RENE SALDANA, Star No. 15720, was at all relevant times a CPD officer assigned to the 9th District. He is sued in his individual capacity.

16. Defendant ALEXANDRA PINEDA, Star No. 14247, was at all relevant times a CPD officer assigned to the 9th District. She is sued in her individual capacity.

17. Defendant LUZ B. PINA, Star No. 13882, was at all relevant times a CPD officer assigned to the 12th District, and is sued in an individual capacity.

18. Defendant ROGER P. BOURDEAU, Star No. 3225, was at all relevant times a CPD officer assigned to the 12th District. He is sued in his individual capacity.

19. Defendant WILBUR T. CALICDAN, Star No. 18374, was at all relevant times a CPD officer assigned to the 12th District. He is sued in his individual capacity.

20. Defendant CHRIS J. BANE, recorded as Star No. 918 in CPD's incident report and as Star No. 21793 in BACP's investigations report, was at all relevant times a CPD sergeant. He is sued in his individual capacity.

21. Defendant SALVADOR SERRANO JR., Star No. 827, was at all relevant times a CPD desk sergeant. He is sued in his individual capacity.

22. Defendant ZAYA MIKHAIL, Star No. 1890, was at all relevant times a CPD desk sergeant, and is sued in an individual capacity.

23. Defendant MARGARET FLISK, Star No. 2682, was at all relevant times a CPD desk sergeant. She is sued in her individual capacity.

24. Defendant DANIELLE A. WAHRER, Star No. 13454, was at all relevant times a CPD sergeant. She is sued in her individual capacity.

25. Defendant JOSEPH SNEED, Star No. 114, was at all relevant times a Business Compliance Manager of the City's BACP. He is sued in his individual capacity.

26. Defendant DANIEL RODRIGUEZ, Star No. 345, was at all relevant times a Business Compliance Supervisor of the City's BACP. He is sued in his individual capacity.

27. Defendant CESAR RAVELO, Star No. 383, was at all relevant times a Business Compliance Investigator of the City's BACP. He is sued in his individual capacity.

28. The UNKNOWN OFFICERS of the Chicago Police Department are officers who participated in the seizure and continued retention of the Plaintiff's property and whose identities are not yet known to the Plaintiff. Each is sued in an individual capacity.

## FACTUAL ALLEGATIONS

### A. The November 16, 2025 Seizure

29. In November 2025, Mr. KULA rented a set of his equipment to CHARLES R. RIECKE.

30. Mr. KULA did not organize, promote, host, or operate the event at which that equipment was used.

31. In the early morning of November 16, 2025, investigators from the City's Department of Business Affairs and Consumer Protection entered a basement suite at 8 N. Western Avenue in Chicago.

32. The BACP investigators present were Defendant SNEED, Defendant RODRIGUEZ, and Defendant RAVELO.

33. CPD officers assigned to the 12th District accompanied and assisted the BACP investigators.

34. An inspector from the City's Department of Buildings, JESUS VASQUEZ, also accompanied them.

35. The investigators and officers dispersed the event in progress at the premises.

36. No one was arrested.

37. CPD prepared an incident report of that event, RD No. JJ491046. See incident report attached hereto as Exhibit 3.

38. The incident report identifies the only suspect as "UNKNOWN."

39. The incident report records that citations were pending "awaiting offenders identification."

40. The incident report was prepared by Defendants BOURDEAU and CALICDAN.

41. The incident report lists Defendants BRITO and PINA as the assisting officers.

42. The incident report lists Defendant BANE as the on-scene supervisor.

43. CPD's incident report records Defendant BANE's star number as 918.

44. BACP's investigations report records Defendant BANE's star number as 21793.

45. The only "victims" the incident report identifies are the three BACP officials above.

46. Defendant SNEED determined on scene that no enforcement action would be taken at that time.

47. According to his investigative report, Defendant SNEED did not take enforcement action because "no promoter, host, or agent could be positively identified."

48. The City's records of the November 16, 2025 enforcement action do not agree on where it occurred.

49. CPD's incident report records the seizure at 54 S. Western Avenue.

50. BACP's citations, the Department of Buildings, and the Department of Administrative Hearings place the event at 8 N. Western Avenue.

51. CPD Inventory Nos. 15851762 and 15851778 record the address as 6 N. Western.

52. BACP's investigations report describes a lookout staged at 50 N. Western Avenue.

53. BACP's investigations report opens with the statement that its investigators "responded to 2400 W Madison St."

54. BACP's investigations report then describes an investigation conducted at 8 N. Western Avenue.

55. The abatement notice arising from the same enforcement action was mailed to "2400 W Madison LLC."

56. CPD's incident report records an event "attended by approximately 300+ individuals."

57. BACP's investigations report records approximately 1,000 patrons present and an occupancy finding of over 1,000.

58. Defendants BRITO, PINA, and other officers gathered Mr. KULA's equipment and inventoried it for retention under CPD Inventory Nos. 15851762, 15851778, 15851782, and 15851789[1]. See Exhibit 1.

59. The equipment inventoried included a Samsung laptop computer, three Pioneer CDJ-2000NXS2 media players, a Pioneer DJM-A9 mixer, a Behringer analog mixer, a WMX1 lighting controller, a two-channel hum eliminator, a network switch, and related cables and hardware.

60. The aggregate replacement value of that equipment is approximately $14,862, exclusive of tax.

61. Defendant SERRANO approved some of the inventories.

62. Defendant MIKHAIL approved some of the other inventories.

63. The officers who seized the equipment had no warrant.

64. The officers made no arrest.

65. The equipment was not contraband.

---

[1] Inventory Receipt 15851789 was listed in the incident report but was never provided by CPD.

66. The equipment was not evidence of any offense.

67. The violations then under investigation were municipal licensing ordinances.

68. Those ordinances are enforced by administrative citation and fine.

69. Any conceivable evidentiary interest in the equipment could have been preserved by photographing it where it stood.

70. Inventory records the officers created were false or misleading in material respects.

71. Of the four inventory forms created on November 16, 2025, CPD has produced three: Nos. 15851762, 15851778, and 15851782. The allegations that follow describe each of those three forms.

72. Each inventory form identifies the person from whom the property was "recovered/seized" as "BRITO, JESSE."

73. "BRITO, JESSE" refers to Defendant BRITO, the officer who seized the property.

74. Each inventory form leaves the "OWNER'S NAME" field blank.

75. Mr. KULA identified himself to CPD as the property's owner on the night of the seizure.

76. Mr. KULA produced a rental invoice to CPD that same night.

77. Mr. KULA supplied CPD with contact information for the persons to whom he had rented the equipment that same night.

78. Each inventory form is captioned "ARRESTEE INFORMATION."

79. Each inventory form directs that a copy be given "TO ARRESTEE."

80. Each inventory form recites 725 ILCS 5/108-2, which governs the custody of property seized without a search warrant.

81. Each inventory form recites 725 ILCS 5/108-10, which governs the custody of property seized under a search warrant.

82. There was no arrestee.

83. No search warrant was issued.

84. The WARRANT NO. field on each inventory form is blank.

85. Each inventory form recites a "state charge" of Municipal Code § 4-156-305.

86. Section 4-156-305 is entitled "License – Exceptions" and identifies the amusements for which no public place of amusement license is required.

87. Section 4-156-305 creates no offense.

88. Each inventory form leaves the Court Date field blank.

89. Each inventory form leaves the Court Branch field blank.

90. No inventory form from the November 16, 2025 seizure identifies any proceeding at which the owner of the property might be heard.

91. The property section of CPD's incident report records fifteen (15) items of "Dj Equipment" under Inventory No. 15851762.

92. CPD Inventory No. 15851762 lists a laptop computer, two charging cables, and a USB charger port.

93. The property section of CPD's incident report marks that property as neither taken, nor stolen, nor recovered, nor seized.

94. Mr. KULA learned of the enforcement action that night.

95. Mr. KULA promptly sought to retrieve his property.

96. CPD directed Mr. KULA to the 12th District station.

97. At the 12th District, Mr. KULA met with CPD personnel and with Defendant SNEED.

98. Defendant SNEED is the BACP compliance manager who supervised the enforcement.

99. Mr. KULA identified his equipment to those present.

100. Mr. KULA produced his rental invoice.

101. Mr. KULA identified the persons to whom the equipment had been rented.

102. Mr. KULA provided contact information for those persons.

103. Mr. KULA asked for the return of his equipment.

104. Mr. KULA's request was refused.

105. CPD's incident report records that refusal.

106. The incident report records that Beat 1210, Defendant BANE, informed Mr. KULA that he would not be able to retrieve the equipment.

107. The incident report records that Defendant BANE told Mr. KULA he could attend the administrative hearing once citations issued.

108. BACP's own report of the investigation records these facts. See BACP's investigations report attached hereto as Exhibit 4.

109. BACP's investigations report notes that Mr. KULA was "cooperative."

110. BACP used the invoice and the contact information Mr. KULA supplied to identify the respondents to whom it issued its citations.

111. From that night forward, the City knew that the seized equipment was rental inventory belonging to Mr. KULA.

112. The City has never accused Mr. KULA of any offense or violation arising from the November 16, 2025 event.

### B. The Administrative Proceedings Ended Months Ago

113. BACP mailed an administrative notice of ordinance violation to an individual named CHARLES R. RIECKE.

114. BACP mailed an administrative notice of ordinance violation to an individual named NICKOLAS LAGOWSKI.

115. BACP mailed an administrative notice of ordinance violation to an entity named EVOL COLLECTIVE LLC, a merchandise vendor.

116. BACP issued no citation to Mr. KULA.

117. The only document BACP directed to Mr. KULA was a mailed *Notice of Violation*.

118. That *Notice of Violation* commenced no proceeding.

119. That *Notice of Violation* imposed no penalty.

120. BACP never pursued that *Notice of Violation*.

121. On January 2, 2026, RIECKE resolved his citation, No. RB72500503, by an agreed settlement approved by an administrative law judge appointed by the City. See the settlement order attached hereto as Exhibit 5.

122. The settlement imposed a $400 fine and $40 in administrative costs on one (1) count.

123. The City non-suited the remaining count.

124. That judgment has been paid in full.

125. On January 2, 2026, EVOL COLLECTIVE LLC resolved its citation, No. RB72500501. See the appearance and disposition attached hereto as Exhibit 6.

126. EVOL COLLECTIVE LLC appeared in that proceeding through MIKHAIL PAVELKO.

127. The disposition recorded on that form imposed a $400 fine and $40 in administrative costs on one (1) count.

128. SEAN VARSHO is the City's Senior Attorney for Prosecutions and Adjudications.

129. On February 13, 2026, Attorney VARSHO advised in writing that the City would dismiss every count of both citations against LAGOWSKI, Nos. RB72500504 and RB72500505, explaining:

> **"After additional review of this violation I do not believe the city has enough evidence to meet our burden."**

See the email attached hereto as Exhibit 7.

130. On February 13, 2026, the City dismissed all counts against LAGOWSKI for want of evidence. See dismissal order attached hereto as Exhibit 8.

131. No proceeding of any kind has ever been brought against Mr. KULA arising from the November 16, 2025 event.

132. CPD nonetheless continues to hold Mr. KULA's equipment "for investigation."

133. CPD refused to release the equipment even after RIECKE's citation had been resolved.

134. On March 10, 2026, an administrative law judge of the City's Department of Administrative Hearings entered an amended order, *nunc pro tunc* to January 2, 2026, stating: "Any property held related to this citation may be released if not held pursuant to other applicable federal, state, or other law, court order, or warrant that authorizes the continued hold of the property." See the amended order attached hereto as Exhibit 9.

135. RIECKE obtained the amended order only by appealing to the City's own prosecuting attorney.

136. RIECKE wrote to Attorney VARSHO, stating that his property was being held on a case that had previously concluded on January 2, 2026.

137. VARSHO replied on March 10, 2026:

> **"While it is my position that the final order is sufficient to show that RB72500503 has been finalized, the court was willing to add language to the order to reflect your concern."**

See the email attached hereto as Exhibit 10.

138. No federal, state, or local law authorizes a continued hold on the property.

139. No court order authorizes a continued hold on the property.

140. No warrant authorizing the seizure or retention of the property exists.

141. No criminal charge has ever been filed against anyone in connection with the November 16, 2025 event.

142. No forfeiture proceeding has ever been commenced against the property.

### C. CPD Refuses to Honor the City's Own Order

143. Beginning in January 2026 and continuing into the spring, Mr. KULA, personally and through persons acting at his direction, presented the settlement order to CPD's Evidence and Recovered Property section ("ERPS") and to personnel of the 12th District.

144. Mr. KULA thereafter presented the amended release order to ERPS and to personnel of the 12th District.

145. On each occasion, Mr. KULA demanded the return of his equipment.

146. On January 19, 2026, Mr. KULA and RIECKE appeared at a CPD district station.

147. They carried RIECKE's signed settlement agreement, the tribunal's *Findings, Decision, and Order*, and RIECKE's signed appearance.

148. Mr. KULA and RIECKE asked for the return of the equipment.

149. CPD desk personnel refused.

150. Desk personnel directed them instead to 400 W. Superior Street to seek to somehow "reopen" the concluded administrative case.

151. ERPS personnel similarly responded that inventoried property cannot be released while the seizing officer's "investigative hold" remains active in CPD's records.

152. ERPS personnel further responded that only Defendant BRITO could clear the hold on Mr. KULA's property.

153. Defendant BRITO refused to clear the hold.

154. Defendant BRITO continues to refuse to clear the hold.

155. Defendant BRITO identified no investigation justifying continued retention of the property.

156. Defendant BRITO has identified no case justifying the continued retention of the property.

157. Defendant BRITO has identified no legal basis for the continued retention of the property.

158. CPD's own directives require the opposite.

159. General Order G07-01 directs the member who creates an inventory to provide for the disposal of the inventoried property by releasing his hold once the property is no longer needed as evidence.

160. Special Order S07-01 provides that inventorying and investigating officers "must release all holds on property when the property is no longer needed as evidence or for investigation."

161. Special Order S07-01 provides that investigative holds be released "as soon as feasible."

162. Special Order S07-01 provides that supervisors ensure seized property not subject to forfeiture is returned to the owner "without undue delay."

163. CPD's Notice to Property Owner form instructs an owner whose case is over to return to the facility where the property was inventoried.

164. That form states that desk personnel "will help you get a property release order from the arresting or investigating officer."

165. For property held for investigation, the same form instructs the owner that he "may obtain your property by getting a court order from a criminal court judge. See 725 ILCS 5/108, *et seq*."

166. Mr. KULA followed the path the Department prescribed.

167. The Department did not follow its own directives.

168. On March 10, 2026, the day the amended release order was entered, Mr. KULA and RIECKE carried that order to the CPD facility where the equipment is stored.

169. Personnel at that facility did not question the order.

170. Personnel at that facility stated that the equipment could not be released because Defendant BRITO still carried it in CPD's records as an active investigation.

171. Personnel at that facility stated that only Defendant BRITO could clear the hold.

172. That evening, Mr. Kula and Riecke presented the order at the 12th District station.

173. Mr. KULA and RIECKE spoke with Defendant BRITO in person.

174. Defendant BRITO was shown the City's order directing release.

175. Defendant BRITO stated that he could not release the property.

176. Defendant BRITO identified no investigation supporting the hold.

177. Defendant BRITO identified no other basis for the hold.

178. The desk sergeant then on duty identified himself as Sergeant "TORRES," Star No. 1436.

179. Mr. KULA and RIECKE asked Sergeant TORRES why the property was being held.

180. Sergeant TORRES answered that he was "not part of the case" and did not know.

181. Presented with the release order, Sergeant TORRES answered:

**"Sir, I hear you, but we're at a station. We don't have that stuff."**

182. Asked who could authorize the release, the sergeant deferred to a prosecutor who does not exist:

> **"I think you should call the ASA and have the ASA contact the officers directly. It'll be easier."**

183. And again:

**"I don't deal with that stuff. It will be the judge, the ASA, and the officers."**

184. No Assistant State's Attorney was assigned to the matter—there was no prosecution.

185. No judge was assigned to the matter, because there was no case.

186. The court order the Notice describes presupposes a pending criminal case or warrant proceeding in which it could be sought.

187. No criminal case or warrant proceeding concerns the property seized on November 16, 2025.

188. There is no docket, no forum, and no judge from whom the order the Notice describes could be obtained. The only procedure the City's own form identifies is unavailable to the owner of this property.

189. Defendant BRITO was in the same station, and refused to release his hold.

190. Sergeant TORRES offered one final piece of advice: "I think you should get an attorney and get this issue solved."

191. Mr. KULA has had no choice but to take that advice and bring this suit.

192. As of the filing of this Complaint, the City has held the property seized on November 16, 2025 for approximately 275 days.

**D. The May 30, 2026 Seizure**

193. On May 30, 2026, at approximately 1:30 a.m., CPD officers assisted BACP in shutting down an event at 4025 S. Western Boulevard in Chicago.

194. No warrant was presented.

195. Approximately ten (10) officers pushed past the event's door staff and entered.

196. Officers on the scene told Mr. KULA that they did not know why they were there.

197. Those officers stated that they had been "called by the BACP to help."

198. On May 30, 2026, Officer SALDANA seized four (4) Pioneer CDJ-3000 media players and one Pioneer DJM-V10 mixer belonging to Mr. KULA.

199. Officer PINEDA participated in that seizure as the second officer of record.

200. That equipment was inventoried under CPD Inventory No. 15964101, RD No. JK274549. See Exhibit 1.

201. The aggregate replacement value of that equipment is approximately $13,995, exclusive of tax.

202. Defendant WAHRER supervised the seizure on scene.

203. Defendant FLISK approved the inventory.

204. Defendant SNEED was present in the disc-jockey booth during the May 30, 2026 seizure.

205. Defendant SNEED directed that seizure.

206. Defendant SNEED is the same BACP compliance manager who supervised the November 16, 2025 enforcement action.

207. Defendant SNEED is the same official who refused Mr. KULA's demand for the return of his property at the 12th District station.

208. The officers who seized the equipment on May 30, 2026 had no warrant.

209. Those officers made no arrest.

210. The inventory form identifies Mr. KULA by name as the owner of the property.

211. The inventory form is marked to hold the property for investigation.

212. The inventory form records that the property was seized neither subject to arrest nor pursuant to a search warrant.

213. No search warrant was issued for the premises or for the property.

214. Mr. KULA was not arrested.

215. No one was arrested at the May 30, 2026 event.

216. The inventory prepared by Defendant SALDANA recites an IUCR classification of "Violation of Summary Closure."

217. The same inventory recites a charge of Municipal Code § 4-156-300.

218. Section 4-156-300 is the public place of amusement licensing provision.

219. Section 4-156-300 has nothing to do with any closure order.

220. Mr. KULA regularly visited the premises at 4025 S. Western Blvd.

221. At no time prior to August 1, 2026 did Mr. KULA observe any notice, placard, or order of closure posted at those premises.

222. Mr. KULA was never served with any closure order or notice of closure relating to those premises.

223. Mr. KULA never received any closure order or notice of closure relating to those premises.

224. Mr. KULA first learned of an *Emergency Closure Order* dated March 15, 2025 on July 27, 2026, by email from the Department of Buildings.

225. No charge under any closure provision has ever been brought against Mr. KULA.

226. A camera mounted in the disc-jockey booth recorded the seizure.

227. Defendant SNEED and those acting with him demanded identification from the person operating the equipment.

228. That person told them the equipment belonged to someone else.

229. Defendant SNEED instructed him to "step away."

230. Defendant SNEED announced the equipment "goes with us" and would be "confiscated."

231. Defendant SNEED stated that the equipment could be retrieved "in our system" after "everything" was "over."

232. Offered information concerning the equipment, Defendant SNEED responded, "Don't need any information."

233. Before any equipment was touched, Defendant SALDANA tilted the booth camera upward, away from the equipment.


*Defendant Saldana Diverting the Camera from its View*

234. The removal of the equipment then proceeded outside the camera's view.

235. The officers did not disconnect the equipment.

236. The officers *tore* the XLR cables from the mixer.

237. The booth video shows the torn connectors.

238. The severed end of a USB connector was left lodged in the port of the Pioneer DJM-V10 mixer.

239. The Pioneer DJM-V10 mixer is a $3,799 instrument ordinarily transported in a padded flight case.

240. When the officers lifted the Pioneer DJM-V10 mixer, the head of an XLR connector remained seated in the mixer, torn from its cable:


*Head of XLR Cable Seen in Mixer After XLR Speaker Wires Ripped Out*

241. Mr. KULA's bag was left zipped at the premises.

242. That bag was opened by CPD and its contents were searched without a warrant.

243. A USB drive belonging to Mr. KULA has not been seen since.

244. The case that held that USB drive has not been seen since either.

245. Neither item appears on any CPD inventory.

246. No citation, notice, or charge of any kind was issued to Mr. KULA in connection with the May 30, 2026 event.

247. BACP mailed an administrative citation to the owner of the building at 4025 S. Western Blvd.

248. BACP mailed an administrative citation to a vendor.

249. Those matters remain pending before the Department of Administrative Hearings.

250. None of those matters concern, reference, or require Mr. KULA's equipment.

251. The pattern of the first seizure has repeated.

252. Before they left, the officers gave Mr. KULA no citation, only a handwritten note bearing the date, time, and place of a hearing.

253. The inventory for the May 30, 2026 seizure lists an administrative "court date" of June 30, 2026.

254. Mr. KULA appeared at 400 W. Superior Street on that date.



*CPD Notice Provided to Kula, Property Owner*

255. The proceeding on that date was not his.

256. The City's attorney, SEAN VARSHO, informed him that citations arising from the event had been issued to other respondents, and none to him.

257. Mr. KULA raised the question of his equipment with VARSHO at that appearance.

258. VARSHO answered only that Mr. KULA would have to have his attorney contact CPD.

259. Mr. KULA received no notice of any subsequent hearing date in any of those matters, including the hearing held July 7, 2026 for the building owner, and has never been cited.

260. CPD has refused to return the equipment seized on May 30, 2026.

261. As of the filing of this Complaint, the City has held that equipment for approximately 80 days.

### E. The August 16, 2026 Seizure

262. On August 16, 2026, CPD officers assigned to the 9th District once again seized professional audio and lighting equipment belonging to Mr. KULA.

263. This was the third seizure of Mr. KULA's equipment by CPD in nine months.

264. The equipment was located on a 1.9-acre parcel commonly known as 4041 S. Emerald Avenue, Chicago, Illinois, and identified by Permanent Index Number 20-04-107-006-0000.

265. The parcel fronts on West 41st Street, on South Emerald Avenue, and on South Union.

266. The parcel is improved with a building and paved parking areas partially enclosed by chain-link fencing.

267. Title to the parcel is held by PACIFIC CAPITAL MANAGEMENT, LLC, an Illinois limited liability company.

268. That property is not a public way.

269. Mr. KULA owns the equipment seized on August 16, 2026.

270. A schedule of that equipment is attached as Exhibit 2.

271. The equipment includes four (4) professional media players, seventeen (17) loudspeakers and subwoofers, twelve (12) lighting fixtures, a lighting controller, five (5) or more flight cases, and approximately one hundred eighty-four (184) cables and power-distribution items.

272. Before the officers arrived, the equipment had been loaded into two (2) box trucks so that they could be removed from the location.

273. Both trucks were parked inside the gated lot.

274. CPD officers entered the lot through a hole in the fencing.

275. The officers also entered by cutting a lock on the gate.

276. The officers obtained bolt cutters from the 9th District station for that purpose.

277. An officer requested the bolt cutters by radio and claimed that a Property Owner was present and was "allowing us to break this lock."

278. No warrant authorized the entry.

279. Mr. KULA asked the officers to permit the equipment to be taken from the location.

280. Another person present had made the same request of the officers before he did.

281. The officers refused both requests.

282. An officer told Mr. KULA, "You're not getting your stuff."

283. Mr. KULA approached the officers standing near the trucks to ask that the trucks be driven off the lot.

284. Mr. KULA did not approach the officers in order to remain on the property.

285. The officers were standing beside the trucks when Mr. KULA approached them.

286. Mr. KULA had keys to one of the two trucks in his hand.

287. The officers then arrested Mr. KULA before he reached the truck.

288. The equipment remained inside the two trucks.

289. The officers caused both trucks to be impounded with the equipment inside them.

290. Neither truck had been moved from where it was parked at the time Mr. KULA asked that the equipment be released.

291. Approximately twenty (20) minutes after Mr. KULA was arrested, CPD officers drove one of the two trucks away from the lot.

292. Mr. KULA watched the officers drive that truck away.

293. The keys used to drive that truck away had been taken from Mr. KULA's pocket.

294. The second truck was still awaiting tow more than an hour after Mr. KULA was taken from the location.

295. CPD thereafter caused the second truck to be towed from the lot.

296. The City has held the equipment since August 16, 2026.

297. Mr. KULA was arrested at the location in the early morning of August 16, 2026, and was released from the 9th District station later that morning.

298. The Plaintiff asserts no claim in this Complaint arising from that arrest, and reserves all such claims.

299. Defendants SALDANA and PINEDA were among the officers present at the location.

300. Defendants SALDANA and PINEDA are the same two officers who seized Mr. KULA's equipment on May 30, 2026.

301. Mr. KULA had reviewed camera footage of the May 30, 2026 seizure and recognized both officers from that footage.

302. Mr. KULA recognized Defendants SALDANA and PINEDA at the location on August 16, 2026.

303. Defendants SALDANA and PINEDA placed Mr. KULA in their squad car.

304. Defendants SALDANA and PINEDA transported Mr. KULA to the 9th District station.

305. Defendants SALDANA and PINEDA processed Mr. KULA at that station.

306. CPD prepared no inventory of the equipment.

307. CPD tendered no inventory to Mr. KULA.

308. No CPD inventory number has ever been assigned to the equipment seized on August 16, 2026.

309. The Vehicle Impoundment/Seizure Report prepared for one of the two trucks is attached as Exhibit 11.

310. On that report, the entry for "Personal Property in Vehicle" is blank.

311. The entry for "Inventory No.(s)" is blank.

312. The entry for "Mileage" is blank.

313. The report identifies no driver.

314. The report identifies no violator.

315. The report gives the ground of impoundment as "Other MCC Impoundment."

316. The description entered is "criminal trespass."

317. The line calling for the municipal code charge is blank.

318. The report records that no copy of it was provided to any owner or driver.

319. The report bears no tow driver signature.

320. The report states no tow truck number.

321. The reverse side of the Vehicle Impoundment/Seizure Report is a Notice of Vehicle Impoundment and/or Forfeiture Proceeding.

322. The Notice states: "Only the owner(s) of record (title holder[s]) of an impounded vehicle may secure the release of the vehicle."

323. The Notice confines the right to request a preliminary or full administrative hearing under Section 2-14-132 of the Municipal Code to the owner of record.

324. The Notice warns: "If the vehicle is not retrieved within 45 days of a final judgment, the vehicle and its contents may be disposed of by the City."

325. No report for the second truck has ever been provided to Mr. KULA.

326. Because the City prepared no inventory, the City's own records do not identify the property the City is holding.

327. CPD took a set of keys from Mr. KULA's person.

328. The set included a key to one of the impounded trucks.

329. The set also included a key that operates no vehicle, carried on a necklace.

330. CPD did not return the keys.

331. CPD prepared no inventory for the keys.

332. A CPD officer told Mr. KULA that CPD would keep the necklace key or would add a criminal charge against him for "possession of police property."

333. No Illinois statute makes possession of that item an offense.

334. The necklace key has not been returned.

335. Illinois law strictly regulates the removal of vehicles from private property.

336. It is unlawful for a commercial vehicle relocator to remove a vehicle when the owner or operator of the vehicle is present, or arrives at the vehicle location at any time prior to the completion of removal, and is willing and able to remove the vehicle immediately. 625 ILCS 5/18a-300(9).

337. The implementing rule of the Illinois Commerce Commission provides that no vehicle shall be relocated where the owner of the vehicle or the owner's agent is present or arrives on the scene before the vehicle is completely removed from the private property, produces the ignition key to the vehicle, and is able to and does immediately remove the vehicle from the private property. 92 Ill. Adm. Code § 1710.43.

338. The Illinois Vehicle Code likewise requires that a vehicle be disconnected and released before actual removal, upon payment of a service fee not exceeding one-half of the posted rate. 625 ILCS 5/4-203(f)(3).

339. The Municipal Code of Chicago imposes parallel requirements. Chicago Municipal Code § 9-84-036.

340. A Property Owner, or other person in lawful possession or control of private property, may not remove, or employ a commercial vehicle relocator to remove, an unauthorized vehicle from the property unless written notice has first been provided by a posted sign. 625 ILCS 5/18a-302.

341. That sign must be at least 24 inches in height and 36 inches in width, posted in a conspicuous place in the affected area, at least 4 feet but less than 8 feet from the ground, and either illuminated or painted with reflective paint, or both. 625 ILCS 5/18a-302.

342. That sign must state the amount of the towing charges to which a person parking may be subject, and must give the name, address and telephone number of the commercial vehicle relocator. 625 ILCS 5/18a-302.

343. Such signs must be posted on the lot at least 24 hours before any vehicle is relocated. 92 Ill. Adm. Code § 1710.42(a).

344. The rules prescribe the content, size, placement and visibility of the sign, including the relocator's full legal name as it appears on its license, its address and telephone number, the storage location, and the towing charges. 92 Ill. Adm. Code § 1710.51.

345. It is unlawful for a commercial vehicle relocator to remove any vehicle from private property without having first obtained written authorization from the Property Owner, a person in

lawful possession or control of the property, an authorized agent, or an authorized law enforcement officer. 625 ILCS 5/18a-300(7).

346. No authorization to tow, and no contract, is effective until a completed copy of the Commission's Relocator Contract Summary form has been electronically filed with and accepted by the Illinois Commerce Commission. 92 Ill. Adm. Code § 1710.91.

347. Only one such authorization or contract may be in effect for any lot at any time. 92 Ill. Adm. Code § 1710.91.

348. The lot is not residential property reserved for or intended exclusively for the use or occupation of residents.

349. Mr. KULA was present on the lot for several hours on the night of August 15 and the morning of August 16, 2026.

350. No sign of the kind described above was posted on the lot.

351. No commercial vehicle relocator was present at the lot.

352. No commercial vehicle relocator removed either truck.

353. Upon information and belief, no written authorization to remove vehicles from the lot had been obtained.

354. Upon information and belief, no Relocator Contract Summary form for the lot had been filed with or accepted by the Illinois Commerce Commission.

355. No vehicle had been removed from the lot at the time Mr. KULA asked that the trucks be driven off it.

356. Mr. KULA was present at the lot and asked that the trucks be driven off it.

357. Mr. KULA had keys to one of the trucks.

358. The officers did not permit either truck to be driven off the lot.

359. Instead, the officers caused both trucks to be impounded.

360. Criminal trespass to real property is not an offense for which the Municipal Code of Chicago authorizes the impoundment of a vehicle. The Code enumerates the violations that carry impoundment as a consequence; trespass to private land is not among them. That is why the "Charge" line of the impound report is blank: there was no provision to cite.

361. The Illinois Vehicle Code supplied no authority. Section 4-203 permits a law enforcement agency to authorize the removal of a vehicle only in defined circumstances:

a) abandonment on a toll highway, interstate, or expressway, 625 ILCS 5/4-203(a);
b) abandonment on a highway in an urban district for ten hours or more, 625 ILCS 5/4-203(b);
c) abandonment outside an urban district for twenty-four hours or more, 625 ILCS 5/4-203(c);
d) a wrecked, burned, dismantled, or unattended vehicle creating a traffic hazard on or adjacent to a highway, 625 ILCS 5/4-203(d);
e) an arrest for driving under the influence, 625 ILCS 5/4-203(e);
f) a hazardous dilapidated motor vehicle, 625 ILCS 5/4-203(g);
g) citations for street racing, 625 ILCS 5/4-203(h); and
h) vehicles with defaced or missing identification numbers, 625 ILCS 5/4-203(k).

362. None of the lawful statutory provisions applied. The trucks were parked on private land, behind a locked gate, in contact with no highway, creating no hazard, and Mr. KULA was arrested for none of the enumerated offenses.

363. For vehicles on private property, the General Assembly assigned the removal power to the Property Owner, not to the police. Section 4-203(f) provides that the owner of privately owned real property "may cause any motor vehicle abandoned or left unattended upon such property without permission to be removed by a towing service," subject to the commercial-relocation protections of

Chapter 18a; a law enforcement agency holds the parallel power only "in the case of publicly owned real property." 625 ILCS 5/4-203(f).

364. If the owner of the Emerald Avenue parcel objected to the trucks' presence, the law supplied its remedy: a licensed relocator's tow under Chapter 18a and Chapter 9-84 of the Municipal Code, with signs posted in advance, fees capped, and release to an owner who appears before the tow is complete. A private landowner's request cannot vest in CPD an impoundment power that no statute or ordinance confers.

365. Nor did the arrest supply authority. An arrest for trespass to land is not an impoundment ground under any provision of the Municipal Code or the Vehicle Code, and the seizure of a vehicle is not a penalty that attaches to an arrest by operation of law.

366. Even if the arrest had been lawful, and even if an arrest could justify impounding a vehicle in the arrestee's control—which it could not—that rationale could reach at most one truck. Mr. Kula is one person. At the moment of his arrest he was operating neither vehicle; both stood parked behind a locked gate. The second truck had no driver and no arrestee. No theory of law connects it to the arrest. Its impoundment was, and could only have been, a seizure of its cargo.

367. No caretaking purpose existed for either truck. Both were secured behind a locked gate on private land, in the condition their custodian had left them. The only insecurity they ever faced was created by the officers, who cut the lock to reach them.

368. The impoundment could not serve the interest it purported to vindicate. The asserted offense was the trucks' presence on the lot without permission. Mr. Kula stood at the gate with the keys, prepared to remove them, which would have ended the asserted violation. The officers instead arrested him, cut the lock, and took the trucks into City custody, thereby prolonging the very condition

they invoked. The impoundment abated nothing; it accomplished only the transfer of the Plaintiff's equipment into the City's possession without a warrant, without an inventory, and without a receipt.

369. CPD General Order G07-03, "Vehicle Towing and Relocation Operations," governs the conduct described above. The relevant provisions are attached as Exhibit 12.

370. Section II states that the Department enforces the ordinances and statutes that authorize towing, relocating, and disposing of vehicles "located on the public way."

371. Section III-A-1 charges the Department of Streets and Sanitation with removing vehicles "from any public way."

372. The location where the equipment was seized is private property and not a public way.

373. Section IV-A-1 directs the member requesting a tow first to establish whether the vehicle is stolen or wanted.

374. The officers ran both trucks' license plates through OEMC.

375. Both plates returned to U-HAUL CO. of Arizona.

376. Neither plate returned as stolen or wanted.

377. Section IV-A-7 directs the member requesting a tow to "remove and inventory personal property found within the vehicle."

378. No personal property was removed or inventoried.

379. Section IV-A-6-c directs that keys pertaining to the vehicle be "returned to the person authorized to possess the keys . . . or inventoried accordingly."

380. The keys were neither returned nor inventoried.

381. Section IV-A-6-b directs that keys which do not operate the vehicle "will be returned to the person authorized to possess the keys."

382. The necklace key was not returned.

383. The truck keys were not returned.

384. As Mr. KULA was leaving the location, Defendant SALDANA spoke to those present about the earlier seizures of Mr. KULA's equipment.

385. Defendant SALDANA said that CPD had taken Mr. KULA's equipment on prior occasions.

386. Defendant SALDANA repeatedly described Mr. KULA as a "crybaby" who had come to the station "crying" about his property.

387. The statement referred to Mr. KULA's earlier efforts to recover the property described in this Complaint.

388. The statement was recorded on video.

389. CPD personnel thus knew of Mr. KULA's earlier efforts to recover his seized property.

390. Mr. KULA has demanded the return of the equipment seized on August 16, 2026.

391. The City has refused and continues to refuse to return it without legal justification.

392. The City has offered Mr. KULA no procedure by which he may contest the taking or secure the return of the equipment.

### F. The City's Policy and Practice

393. CPD administers seized personal property through ERPS under policies and practices established or ratified by the City.

394. Under that system, property inventoried under an "investigative hold" will not be released, whatever any tribunal orders, until the seizing officer unilaterally clears the hold.

395. The system gives the owner no notice of the basis for the hold.

396. The system imposes no limit on the duration of the hold.

397. The system provides no neutral official to review the hold.

398. The system provides no procedure by which the owner may contest the hold.

399. The owner's access to his own property depends entirely on the discretion of the officer who took it.

400. Mr. KULA's experience is that practice working as designed, three times over.

401. CPD officers and BACP officials seize equipment at event licensing enforcement actions without warrants.

402. On November 16, 2025 and on May 30, 2026, they did so without any arrest and without any charge.

403. On August 16, 2026, they did so without preparing or tendering any inventory receipt at all.

404. CPD records those seizures on forms that misstate the facts.

405. CPD marked the property held for an investigation that does not exist.

406. On August 16, 2026, they recorded no seizure of the property whatsoever.

407. CPD generally directs the owner to administrative proceedings.

408. Should there be any administrative proceedings, when those proceedings conclude and the City's own tribunal orders their release, CPD disregards the order.

409. They CPD invites the owner to hire a lawyer.

410. The City knows of this practice.

411. The City has been deliberately indifferent to it.

412. The City's personnel describe the practice openly: ERPS states that it cannot release property without the seizing officer's clearance; the officer declines to give it; and district personnel tell the owner to seek counsel.

413. The practice, and not any isolated act, is the moving force behind the deprivation of Mr. KULA's rights.

414. The seized inventory produces rental income.

415. The items taken on November 16, 2025 rent at market rates totaling approximately $2,300 per day.

416. The items taken on May 30, 2026 rent at market rates totaling approximately $1,550 per day.

417. The items taken on August 16, 2026 rent at market rates totaling approximately $5,700 per day.

418. Since the seizures, Mr. KULA has lost rental engagements and the revenue they would have produced, in an amount to be proven at trial. The loss continues for as long as the City holds his inventory.

419. To keep his business operating, Mr. KULA has rented substitute equipment from third parties at his own expense. Those out-of-pocket costs continue to accrue and will be proven at trial.

420. For any given engagement, the lost rental revenue and the cost of substitute equipment are alternative measures of the same loss. The Plaintiff does not seek both for the same engagement.

421. The May 30, 2026 seizure left the equipment physically damaged.

422. The cabling torn from the mixer must be repaired or replaced, at a cost to be proven at trial.

423. The connector severed in the port of a media player must be repaired or replaced, at a cost to be proven at trial.

424. The USB drive and the case that held it have not been seen since the May 30, 2026 search and appear on no CPD inventory.

425. The equipment is sensitive electronic hardware.

426. Its market value and its rental value depend on its condition.

427. Each month of warehouse storage compounds the risk of its deterioration.

**Count I:**
**Unreasonable Seizure of Property: Fourth Amendment (42 U.S.C. § 1983)**
**November 16, 2025 Seizure**
**(Against Defendants Brito, Pina, Bourdeau, Calicdan, Bane, Sneed, Rodriguez, Ravelo, Serrano, and Mikhail and the Unknown Officers)**

428. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

429. The Fourth Amendment, applicable to the States through the Fourteenth Amendment, secures the right of the people to be free from unreasonable searches and seizures of their property. A warrantless seizure of personal property is presumptively unreasonable, and no exception to the warrant requirement applied here: there was no arrest, no exigency, no consent, and no probable cause to believe the equipment was contraband, the fruit or instrumentality of a crime, or evidence of any offense.

430. The recognized exceptions to the warrant requirement are narrow: a search incident to a lawful arrest, exigent circumstances, consent, and the plain view of contraband or evidence. The Defendants' own inventory forms invoke the arrest-and-warrant framework: each recites 725 ILCS 5/108-2, governing custody of property seized without a warrant, and 725 ILCS 5/108-10, governing seizure under warrant, and each is directed to an "arrestee." No arrest was made, no warrant issued, and no exception applied.

431. Defendants BRITO, PINA, BOURDEAU, and CALICDAN and UNKNOWN OFFICERS seized the Plaintiff's equipment on November 16, 2025.

432. They did so acting under color of law.

433. They acted together with Defendants SNEED, RODRIGUEZ, and RAVELO.

434. They acted under the on-scene supervision of Defendant BANE.

435. The seizure was without any lawful basis.

436. They documented the seizure with inventory records that misstated its circumstances.

437. Defendants SERRANO and MIKHAIL approved the inventories, each check-marked to hold the property for investigation.

438. The seizure was objectively unreasonable. No reasonable officer in the Defendants' position could have believed it lawful.

439. As a direct and proximate result, the Plaintiff was deprived of the possession and use of his property and has suffered, and continues to suffer, economic damages, including the loss of the use of his equipment, lost rental engagements and revenue, and the out-of-pocket cost of substitute equipment, all of which accrue for as long as the retention continues.

**WHEREFORE,** the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter judgment in his favor and against Defendants JESSE BRITO, LUZ B. PINA, ROGER P. BOURDEAU, WILBUR T. CALICDAN, CHRIS J. BANE, JOSEPH SNEED, DANIEL RODRIGUEZ, CESAR RAVELO, SALVADOR SERRANO JR., ZAYA MIKHAIL, and the UNKNOWN OFFICERS, jointly and severally, and award him:

i) a declaration that the November 16, 2025 seizures violated the Fourth Amendment and that the continued retention without notice, review, or any procedure violates the Fourteenth Amendment;

ii) compensatory damages in an amount to be determined at trial;

iii) nominal damages;

iv) punitive damages;

v) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

vi) such other relief as the Court deems just.

**Count II:**
**Unreasonable Seizure of Property: Fourth Amendment (42 U.S.C. § 1983)**
**May 30, 2026 Seizure**
**(Against Defendants SNEED, SALDANA, PINEDA, WAHRER, FLISK, and the UNKNOWN OFFICERS)**

440. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

441. Defendants SNEED, SALDANA, PINEDA, and UNKNOWN OFFICERS seized the Plaintiff's equipment on May 30, 2026.

442. They did so acting under color of law.

443. They acted under the on-scene supervision of Defendant WAHRER.

444. They seized the equipment without a warrant.

445. They seized the equipment without an arrest.

446. They seized the equipment without exigency or consent.

447. They seized the equipment without probable cause to believe it was contraband or evidence of any offense.

448. They refused to receive information identifying the property and its owner.

449. Defendant FLISK approved the inventory, check-marked to hold the property for investigation.

450. The manner of the seizure was itself unreasonable. The Defendants damaged the property in taking it, tearing its cabling from the mixer and severing a connector in the port of a media player, when disconnecting the equipment would have cost them nothing.

451. The seizure was objectively unreasonable. No reasonable officer or official in the Defendants' position could have believed it lawful.

452. As a direct and proximate result, the Plaintiff was deprived of the possession and use of his property, his property was physically damaged, and he has suffered, and continues to suffer, economic damages, including the loss of the use of his equipment, lost rental engagements and

revenue, the out-of-pocket cost of substitute equipment, the cost to repair or replace the damaged components, and the value of the USB drive and its case, which have not been seen since the seizure and appear on no CPD inventory.

**WHEREFORE,** the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter judgment in his favor and against Defendants JOSEPH SNEED, RENE SALDANA, ALEXANDRA PINEDA, DANIELLE A. WAHRER, MARGARET FLISK, and the UNKNOWN OFFICERS, jointly and severally, and award him:

i) a declaration that the May 30, 2026 seizures violated the Fourth Amendment and that the continued retention without notice, review, or any procedure violates the Fourteenth Amendment;

ii) compensatory damages in an amount to be determined at trial;

iii) nominal damages;

iv) punitive damages;

v) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

vi) such other relief as the Court deems just.

**Count III:**
**Unreasonable Seizure of Property: Fourth Amendment (42 U.S.C. § 1983)**
**August 16, 2026 Seizure**
**(Against Defendants Saldana, Pineda, and Unknown Officers)**

453. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

454. Defendants SALDANA, PINEDA, and UNKNOWN OFFICERS seized Plaintiff's equipment on August 16, 2026.

455. They did so acting under color of law.

456. They seized the equipment without a warrant.

457. They seized the equipment without probable cause to believe it was contraband, or the fruit or instrumentality of any offense, or evidence of any offense.

458. They seized the equipment without exigency and without consent.

459. Before any vehicle had been removed from the lot, Plaintiff asked that the equipment be permitted to leave the location.

460. The Defendants refused.

461. They seized the equipment by impounding the two vehicles in which it had been loaded.

462. They created no inventory of the equipment.

463. They gave Plaintiff no receipt for the equipment.

464. They identified no provision of the Municipal Code of Chicago authorizing the impoundment.

465. The Department's own General Order directed them to remove and inventory the personal property found within the vehicles. They did not.

466. The seizure was objectively unreasonable. No reasonable officer in Defendants' position could have believed it lawful.

467. The impoundments were not lawful exercises of any community-caretaking function. The vehicles obstructed no traffic, endangered no one, and sat secured on private land; the arrest of Mr. KULA supplied no authority to impound any vehicle, still less a second vehicle he was not operating; and alternatives short of seizure—leaving the trucks where they stood, releasing them to the person holding the keys, or notifying their owner of record—were available and refused. *See United States v. Duguay*, 93 F.3d 346, 351–53 (7th Cir. 1996).

468. As a direct and proximate result, Plaintiff has been deprived of the possession and use of his property and has suffered, and continues to suffer, economic damages, including the loss of use of the equipment, lost rental engagements and the revenue they would have produced, and the out-of-pocket cost of substitute equipment, all of which accrue for as long as the retention continues.

**WHEREFORE**, Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter judgment in his favor and against Defendants RENE SALDANA, ALEXANDRA PINEDA, and UNKNOWN OFFICERS, jointly and severally, and award him:

i) a declaration that the August 16, 2026 seizures violated the Fourth Amendment and that the continued retention without notice, review, or any procedure violates the Fourteenth Amendment;

ii) compensatory damages in an amount to be determined at trial;

iii) nominal damages;

iv) punitive damages;

v) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

vi) such other relief as the Court deems just.

**Count IV:**
**Deprivation of Property Without Due Process:**
**Fourteenth Amendment (42 U.S.C. § 1983)**
**(Against All Defendants)**

469. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

470. The Plaintiff holds a protected property interest in his equipment.

471. The Defendants have retained that property for approximately 275 days, 80 days, and one day, respectively, without providing the Plaintiff notice of any basis for the retention, an opportunity to be heard before a neutral decision-maker, or any procedure at all by which he may secure its return.

472. The one process the City directed him to—the administrative hearing—ran to completion and produced an order of release that the City continues to ignore.

473. The deprivation is not the product of a random or unauthorized act. It is the product of the City's established procedure: the officer-controlled investigative hold administered through ERPS. Where an established procedure works the deprivation, due process requires notice and an opportunity to be heard, and the City provides neither.

474. The equipment seized on August 16, 2026 was taken by impounding two trucks.

475. The process the City's impoundment scheme provides runs to the vehicle's owner of record. See Exhibit 11.

476. Neither truck was registered to the Plaintiff.

477. The Plaintiff owned the equipment loaded inside the trucks and not the trucks themselves.

478. The Plaintiff therefore cannot invoke the impoundment process to contest the taking of his equipment or to obtain its return.

479. The City has identified no other procedure available to the owner of property impounded inside another person's vehicle.

480. Defendants BRITO, PINA, BOURDEAU, CALICDAN, BANE, SNEED, RODRIGUEZ, RAVELO, SALDANA, PINEDA, and WAHRER personally participated in the deprivation by directing or executing the seizures.

481. Those Defendants imposed and maintained holds on the Plaintiff's property while knowing that no investigation, charge, or proceeding justified them.

482. Defendants SERRANO, MIKHAIL, and FLISK approved the inventories and the holds those inventories recorded.

483. Defendant BANE refused the return of the property upon demand.

484. As a direct and proximate result, the Plaintiff has been deprived of his property without due process of law and has suffered, and continues to suffer, economic damages, including the loss of the use of his equipment, lost rental engagements and revenue, and the out-of-pocket cost of substitute equipment, all of which accrue for as long as the retention continues.

**WHEREFORE,** the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and award him:

i) an order directing the immediate release and return of all property inventoried under CPD Inventory Nos. 15851762, 15851778, 15851782, 15851789, and 15964101, and of the equipment seized on August 16, 2026 and described in Exhibit 2, for which the City prepared no inventory;

ii) compensatory damages in an amount to be determined at trial;

iii) nominal damages;

iv) punitive damages against the individual Defendants;

v) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

vi) such other relief as the Court deems just.

**Count V:**
**Unconstitutional Policy and Practice**
**(42 U.S.C. § 1983)**
**(Against the City of Chicago)**

485. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

486. The City maintains, as an express policy or as a practice so widespread and settled as to have the force of policy, a property-retention system whose design works the deprivation. Through ERPS the City conditions the release of seized property solely on the clearance of the seizing officer. The system gives the owner no notice of the basis for the hold, no limit on its duration, no neutral review of it, and no procedure by which to contest it. It provides no means of enforcing an order of the City's own tribunal directing release. That design is the City's own, and the deprivation follows from the system's ordinary operation rather than from any departure from it. The City's own personnel describe the system in those terms.

487. That policy and practice was the moving force behind each of the constitutional violations alleged above. The City is liable for it under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

488. The City has acted with deliberate indifference to the known and obvious consequences of its system: the standardless, indefinite retention of its residents' property without process of any kind.

489. The Plaintiff has no adequate remedy at law for the continued application of this policy and practice to him. His losses accrue daily, they will continue for as long as the City holds his property, and no procedure exists within the City's system by which he can secure its return. The equipment itself is sensitive electronic hardware, already damaged in the taking; each month of warehouse storage compounds the risk of deterioration that no damages award can fully measure.

490. The risk is immediate. The City's impoundment notice warns that an unclaimed vehicle and its contents may be disposed of within forty-five (45) days of a final judgment, and the trucks' owner of record—not the Plaintiff—controls their redemption. See Exhibit 11. The equipment seized on August 16, 2026 may therefore be sold or destroyed before any adjudication of the Plaintiff's rights.

491. As a direct and proximate result, the Plaintiff has suffered, and continues to suffer, the deprivation of his constitutional rights and economic damages that accrue daily, including the loss of the use of his equipment, lost rental engagements and revenue, and the out-of-pocket cost of substitute equipment.

**WHEREFORE,** the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter judgment in his favor and against the Defendant CITY OF CHICAGO, and award him:

i) a declaration that the policy and practice described above violates the Fourth and Fourteenth Amendments;
ii) an injunction directing the return of the Plaintiff's property and barring the continued application of the policy and practice to him;
iii) compensatory damages in an amount to be determined at trial;
iv) nominal damages;
v) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and
vi) such other relief as the Court deems just.

**Count VI:**
**Mandamus**
**(735 ILCS 5/14-101, *Et seq.*)**
**(Against the City of Chicago)**

492. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

493. The Plaintiff has a clear right to the possession of his property. He owns it, he is entitled to its immediate return, and the City's own tribunal has ordered that it be released.

494. The City has a clear duty to release it. Its Department of Administrative Hearings directed release; its own directives require the seizing officer to clear an investigative hold once the property is no longer needed as evidence; and no law, warrant, court order, criminal charge, or forfeiture proceeding authorizes its continued retention.

495. That duty is ministerial. Where the predicate for a hold has dissolved, release is owed as a matter of obligation, not discretion. Nothing is left to the officer's judgment.

496. The Plaintiff has demanded the return of his property, and the City has refused. He has no other adequate remedy at law to compel the City to perform its duty.

**WHEREFORE**, the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court issue a writ of mandamus directing the CITY OF CHICAGO to clear any investigative hold on, and to release and return, all property inventoried under CPD Inventory Nos. 15851762, 15851778, 15851782, 15851789, and 15964101, and of the equipment seized on August 16, 2026 and described in Exhibit 2, together with such other relief as the Court deems just.

**Count VII:**
**Replevin**
**(735 ILCS 5/19-101, *Et seq.*)**
**(Against the City of Chicago)**

497. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

498. The Plaintiff is the owner of, and is lawfully entitled to the immediate possession of, the equipment inventoried under CPD Inventory Nos. 15851762, 15851778, 15851782, 15851789, and 15964101, and of the equipment seized on August 16, 2026 and described in Exhibit 2, for which no inventory was prepared, each as described above.

499. The property is wrongfully detained by the City at CPD facilities in Chicago, Illinois.

500. The property was not taken for any tax, assessment, or fine, and it is not held pursuant to any warrant, court order, judgment, or other lawful process.

501. The Plaintiff has demanded the return of the property, and the City has refused.

**WHEREFORE,** the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter an order for the replevin of the property described above and its delivery to the Plaintiff, award him damages for its wrongful detention including lost rental engagements and the cost of substitute equipment, and grant such other relief as the Court deems just.

**Count VIII:**
**Conversion**
**(Against All Defendants)**

502. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

503. The Plaintiff has an absolute and unconditional right to the immediate possession of the equipment described above.

504. The Plaintiff demanded its return. The Defendants refused.

505. The Defendants wrongfully and without authorization assumed control, dominion, and ownership over the property, depriving the Plaintiff of its possession and use.

506. The Defendants' conduct was willful and wanton. They have held the property in defiance of the City's own order directing its release, damaged the equipment in the taking, and mocked the owner's protest. Their conduct shows an utter indifference to, and a conscious disregard for, the Plaintiff's property rights.

507. As a direct and proximate result, the Plaintiff has suffered damages, including the value of the property, the physical damage inflicted upon it, the loss of its use and rental income, the cost of substitute equipment, and the value of the USB drive and its case, and the value of the necklace key taken from his person and not returned.

**WHEREFORE,** the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and award him compensatory damages in an amount to be determined at trial, including the value of the seized property, the physical damage inflicted upon it, and the loss of its use and rental income; punitive damages against the individual Defendants; prejudgment interest as allowed by law; costs; and such other relief as the Court deems just.

**Count IX:**
**Indemnification**
**(745 ILCS 10/9-102)**
**(Against the City of Chicago)**

508. The Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

509. At all relevant times, the individual Defendants were employees of the CITY OF CHICAGO acting within the scope of their employment.

510. Under 745 ILCS 10/9-102, the City is directed to pay any tort judgment for compensatory damages for which its employees are liable for conduct within the scope of employment.

**WHEREFORE**, the Plaintiff, CHRISTOPHER T. KULA, respectfully requests that this Court enter judgment against the Defendant CITY OF CHICAGO in the amount of any compensatory damages awarded against the individual Defendants, and grant such other relief as the Court deems just.

**JURY DEMAND**

The Plaintiff demands trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

Respectfully submitted,

CHRISTOPHER T. KULA,

by one of his attorneys,

/s/ Vlad V. Chirica
Vlad V. Chirica
CHIRICA LAW OFFICE LLC

Vlad V. Chirica (ARDC No. 6320436)
CHIRICA LAW OFFICE LLC
203 N. LaSalle Street, Suite 2100
Chicago, Illinois 60601-1226
(312) 868-0453
vlad@chirica.law
www.chirica.law

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, CHRISTOPHER T. KULA, declare under penalty of perjury that the factual allegations of the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.




CHRISTOPHER T. KULA

# EXHIBIT 1

**PROPERTY INVENTORY – NO.**
**CHICAGO POLICE DEPARTMENT**
CPD-34.523 (REV. 10/09)

INV NO 15851762 | PKG NO 6869219 | UNIT 012 | INVENTORY NO. 15851762 | WARRANT NO.

DATE RECOVERED: 16-NOV-2025 | RD JJ491046 | RE-INVENTORY OF:

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY |
|---|---|---|
| 14107896 | 1 | COMPUTER HARDWARE / SOFTWARE : SILVER COLORED SAMSUNG LAPTOP |
| 14107897 | 2 | COMPUTER HARDWARE / SOFTWARE : WHITE COLORED CHARGING CABLES |
| 14107898 | 1 | COMPUTER HARDWARE / SOFTWARE : WHITE COLORED USB CHARGER PORT |

COPY 4 CITIZEN COPY

COMMENTS: | $ INVENTORY AMT

EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY
Court Date
Court Branch

CURRENCY:

IUCR: 5011 OTHER OFFENSE LICENSE VIOLATION | CHARGE TYPE:
STATE CHARGES: 4-156-305 | INCHOATE: OFFENSE AS CITED

RECOVERED/SEIZED FROM – NAME: BRITO, JESSE | AT 6 N WESTERN AVE CHICAGO, IL 60612 | BEAT OF RECOVERY 1222
☐ DECEASED ☐ ARRESTED

OWNER'S NAME | ADDRESS | TELEPHONE NO.

FOUND BY – NAME: BRITO, JESSE Star: 11892 | ADDRESS | TELEPHONE NO.
☒ CHECK IF C.P.D.

SEE COPY 4 FOR NOTICE TO FINDER

CHECK ONE

☒ HOLD FOR INVESTIGATION AND/OR EVIDENCE (IF NOT NEEDED FOR INVESTGATION/EVIDENCE, LEAVE BLANK)
INVESTIGATING OFFICER – BRITO, JESSE | STAR NO. 11892 | UNIT 012

1st OFFICER'S NAME: BRITO, JESSE | STAR NO. 11892

☐ PROPERTY AVAILABLE FOR RETURN TO OWNER
SIGNATURE: Electronic Approval | UNIT 012

☐ TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED) (THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)
2nd OFFICER'S NAME | STAR NO.

INITIAL DESTINATION OF PROPERTY: ERPS
SIGNATURE: Electronic Approval | UNIT

VIA ☐ POLICE MAIL ☒ E & RPS PICKUP ☐ RECOVERING UNIT PERSONNEL ☐ EVID./LAB TECHNICIAN
APPROVING DESK SERGEANT: SERRANO JR, SALVADOR | STAR NO. 827 | DATE 16-NOV-2025 | TIME 04:56

**Notice to Property Owner**

This Property Inventory form is your receipt for property inventoried by the Chicago Police Department ("CPD"). When you received this receipt, you should have also received a form entitled NOTICE TO PROPERTY OWNER (the "Notice") explaining how you may get back inventoried property. If you did not receive the Notice, return to the CPD facility where your property was inventoried and ask Desk Personnel for the Notice. A complete copy of the Notice is also available at www.ChicagoPolice.org. If you have further questions, please contact the CPD Evidence and Recovered Property Section at 312-746-6777.

**NOTICE TO FINDER:** Lost or Abandoned Property will be treated in accordance with 765 ILCS 1030, which does not provide for a return of found property to the finder.

**ARRESTEE INFORMATION**

SEIZURE WITHOUT SEARCH WARRANT– (725 ILCS 5/108-2)
GIVE THIS COPY TO ARRESTEE.

SEIZURE WITH SEARCH WARRANT – (725 ILCS 5/108-10)
ATTACH THIS COPY TO SEARCH WARRANT.

PROPERTY INVENTORY - NO.
CHICAGO POLICE DEPARTMENT
CPD-34.523 (REV. 10/09)

INV NO 15851778 | PKG NO 6869233 | UNIT 012

INVENTORY NO. 15851778 | WARRANT NO.

DATE RECOVERED 16-NOV-2025 | RD JJ491046 | RE-INVENTORY OF:

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY |
|---|---|---|
| 14107984 | 1 | OTHER : SILVER IN COLOR BEHRINGER ANALOG MIXER |
| 14107985 | 3 | OTHER : BLACK PIONEER CDJ |
| 14107987 | 1 | OTHER : BLACK PIONEER DJ MIXER |

COPY 4 CITIZEN COPY

COMMENTS:

$ INVENTORY AMT

EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY

Court Date

Court Branch

CURRENCY:

IUCR: 5011 OTHER OFFENSE LICENSE VIOLATION
STATE CHARGES: 4-156-305
CHARGE TYPE:
INCHOATE: OFFENSE AS CITED

RECOVERED/SEIZED FROM - NAME BRITO, JESSE
☐ DECEASED ☐ ARRESTED
AT 6 N WESTERN AVE CHICAGO, IL 60612
BEAT OF RECOVERY 1222

OWNER'S NAME | ADDRESS | TELEPHONE NO.

FOUND BY - NAME BRITO, JESSE Star: 11892 | ADDRESS | TELEPHONE NO.
☒ CHECK IF C.P.D.

SEE COPY 4 FOR NOTICE TO FINDER

CHECK ONE

☒ HOLD FOR INVESTIGATION AND/OR EVIDENCE (IF NOT NEEDED FOR INVESTIGATION/EVIDENCE, LEAVE BLANK)
INVESTIGATING OFFICER - BRITO, JESSE | STAR NO. 11892 | UNIT 012

☐ PROPERTY AVAILABLE FOR RETURN TO OWNER

☐ TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED) (THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)

1st OFFICER'S NAME BRITO, JESSE | STAR NO. 11892
SIGNATURE Electronic Approval | UNIT 012
2nd OFFICER'S NAME | STAR NO.
SIGNATURE Electronic Approval | UNIT

INITIAL DESTINATION OF PROPERTY: ERPS

VIA ☐ POLICE MAIL ☐ RECOVERING UNIT PERSONNEL
☒ E & RPS PICKUP ☐ EVID./LAB TECHNICIAN

APPROVING DESK SERGEANT MIKHAIL, ZAYA | STAR NO. 1890 | DATE 16-NOV-2025 | TIME 05:22

Notice to Property Owner

This Property Inventory form is your receipt for property inventoried by the Chicago Police Department ("CPD"). When you received this receipt, you should have also received a form entitled NOTICE TO PROPERTY OWNER (the "Notice") explaining how you may get back inventoried property. If you did not receive the Notice, return to the CPD facility where your property was inventoried and ask Desk Personnel for the Notice. A complete copy of the Notice is also available at www.ChicagoPolice.org. If you have further questions, please contact the CPD Evidence and Recovered Property Section at 312-746-6777.

NOTICE TO FINDER: Lost or Abandoned Property will be treated in accordance with 765 ILCS 1030, which does not provide for a return of found property to the finder.

ARRESTEE INFORMATION

SEIZURE WITHOUT SEARCH WARRANT- (725 ILCS 5/108-2)

GIVE THIS COPY TO ARRESTEE.

SEIZURE WITH SEARCH WARRANT - (725 ILCS 5/108-10) ATTACH THIS COPY TO SEARCH WARRANT.

Created by: PC0CU11

COPY 4 - GIVE OR SEND TO FINDER, ARRESTEE OR OWNER

Printed by: PC0Z580 19-JAN-2026 22:50

**CHICAGO POLICE DEPARTMENT**
CPD-34.523 (REV. 10/09)

INV NO 15851782 | PKG NO 6869236 | UNIT 012 | INVENTORY NO. 15851782 | WARRANT NO.

DATE RECOVERED 16-NOV-2025 | RD JJ491046 | RE-INVENTORY OF:

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY |
|---|---|---|
| 14107930 | 1 | OTHER : BLACK MINI 2-CHANNEL HUM DESTROYER |
| 14107931 | 1 | OTHER : BLACK GIGABIT SWITCH |
| 14107932 | 1 | OTHER : BLACK POWER OUTLET |
| 14107933 | 1 | OTHER : BLACK WMX1 |
| 14107934 | 1 | OTHER : BLACK DJ WIRE OUTPUT |

COMMENTS: | $ INVENTORY AMT

**EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY**

Court Date

Court Branch

CURRENCY:

IUCR: 5011 OTHER OFFENSE LICENSE VIOLATION | CHARGE TYPE:
STATE CHARGES: 4-156-305 | INCHOATE: OFFENSE AS CITED

RECOVERED/SEIZED FROM - NAME BRITO, JESSE | AT 6 N WESTERN AVE CHICAGO, IL 60612 | BEAT OF RECOVERY 1222
☐ DECEASED ☐ ARRESTED

OWNER'S NAME | ADDRESS | TELEPHONE NO.

FOUND BY - NAME BRITO, JESSE Star: 11892 | ADDRESS | TELEPHONE NO.
[x] CHECK IF C.P.D.

SEE COPY 4 FOR NOTICE TO FINDER

CHECK ONE

[x] HOLD FOR INVESTIGATION AND/OR EVIDENCE (IF NOT NEEDED FOR INVESTIGATION/EVIDENCE, LEAVE BLANK) | INVESTIGATING OFFICER - BRITO, JESSE | STAR NO. 11892 | UNIT 012

☐ PROPERTY AVAILABLE FOR RETURN TO OWNER

☐ TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED) (THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)

1st OFFICER'S NAME BRITO, JESSE | STAR NO. 11892
SIGNATURE Electronic Approval | UNIT 012
2nd OFFICER'S NAME | STAR NO.
SIGNATURE Electronic Approval | UNIT

INITIAL DESTINATION OF PROPERTY: ERPS

VIA ☐ POLICE MAIL [x] E & RPS PICKUP ☐ RECOVERING UNIT PERSONNEL ☐ EVID./LAB TECHNICIAN | APPROVING DESK SERGEANT SERRANO JR, SALVADOR | STAR NO. 827 | DATE 16-NOV-2025 | TIME 05:04

**Notice to Property Owner**

This Property Inventory form is your receipt for property inventoried by the Chicago Police Department ("CPD"). When you received this receipt, you should have also received a form entitled NOTICE TO PROPERTY OWNER (the "Notice") explaining how you may get back inventoried property. If you did not receive the Notice, return to the CPD facility where your property was inventoried and ask Desk Personnel for the Notice. A complete copy of the Notice is also available at www.ChicagoPolice.org. If you have further questions, please contact the CPD Evidence and Recovered Property Section at 312-746-6777.

**NOTICE TO FINDER:** Lost or Abandoned Property will be treated in accordance with 765 ILCS 1030, which does not provide for a return of found property to the finder.

**ARRESTEE INFORMATION**

*SEIZURE WITHOUT SEARCH WARRANT- (725 ILCS 5/108-2)*

*GIVE THIS COPY TO ARRESTEE.*

*SEIZURE WITH SEARCH WARRANT - (725 ILCS 5/108-10) ATTACH THIS COPY TO SEARCH WARRANT.*

Created by: PC0CU11

**COPY 4 - GIVE OR SEND TO FINDER, ARRESTEE OR OWNER**

Printed by: PC0Z580 19-JAN-2026 22:51

# Notice to Property Owner

**The property inventory form you received is your receipt for property inventoried by the Chicago Police Department (CPD). Keep it in a safe place and have it available when contacting the CPD about your property.** You may obtain inventoried property by following the procedures detailed below. Information on how to obtain inventoried property is also available at www.ChicagoPolice.org. If you have any questions, please contact the CPD's Evidence and Recovered Property Section (ERPS) at **(312) 746–6777**. ERPS is located at 1011 S. Homan Avenue, Chicago, Illinois 60624, and is open Monday through Friday, 8:00 a.m. to 3:00 p.m. (closed holidays).

**Property Available for Return to Owner:**
If your receipt is marked "Property Available for Return to Owner," and the property is not subject to any federal, state, or local forfeiture laws, you may obtain your property or money by presenting the receipt and a photo ID at ERPS. If you do not contact the CPD to obtain your property within 30 days of the date on this receipt, it will be considered abandoned under Chicago Municipal Code Section 2 84–160 and will be destroyed, confiscated, or sold at public auction at the CPD's discretion.

If you are in jail or incarcerated, your receipt is marked "Property Available for Return to Owner," and the property is not subject to any federal, state, or local forfeiture laws, you may get property returned to you by sending a letter instructing ERPS to whom the property should be released, identifying the name of the facility where you are jailed or incarcerated, and providing a copy of your receipt and your photo ID to: Chicago Police Department, Evidence and Recovered Property Section, 1011 S. Homan Avenue, Chicago, Illinois, 60624. If the property is money, a check will be sent to you at the facility where you are jailed or incarcerated. Property that is not money will not be mailed unless postage is prepaid by the owner or authorized representative.

**Notice to Finders of Property:**
Lost or abandoned property will be processed under Illinois law, which does not provide for return of found property to the finder. See 765 ILCS 1030/1, *et seq.*

**Property Held for Evidence or Investigation:**
If your receipt is marked "Hold for Investigation and/or Evidence," and the property is not money and not subject to any federal, state, or local forfeiture laws (including narcotics, gambling or prostitution offenses), you may obtain your property by getting a court order from a criminal court judge. See 725 ILCS 5/108, et seq. You must bring the court order, your receipt, and your photo ID to ERPS to receive your property. To find out if your property is subject to forfeiture, you may contact the CPD's Asset Forfeiture Unit at **(312) 746–7630**, Monday through Friday, 8:00 a.m. to 4:00 p.m. (closed holidays).

If your criminal case is over, and you did not have the judge sign an order for return of the property, you should return to the CPD facility where your property was inventoried. Give your receipt to desk personnel and they will help you get a property release order from the arresting or investigating officer. You must then bring the property release order, your receipt, and your photo ID to ERPS to receive your property. Under Chicago Municipal Code Section 2–84–160, you have 30 days to claim your property from the final court date of the proceedings in connection with which your property was inventoried. If you do not claim your property within the 30 day period, the property will be considered abandoned and will be destroyed, confiscated, or sold at public auction at the CPD's discretion.

**Money Held for Evidence or Investigation**
If your property is **money** and held for evidence or investigation, and not subject to any federal, state, or local forfeiture laws, it will be available for pick up at ERPS on the 31st day after the date it was inventoried unless the CPD, the Cook County State's Attorney, or other applicable authority obtains a court order or search warrant to retain custody of the property. To find out if your money is subject to a court order or search warrant, contact ERPS at **(312) 746–6777**. You must present your receipt and your photo ID at ERPS to obtain your money. If you do not pick up the money from ERPS within 60 days from the date it becomes available, a check for the amount of money inventoried, minus the cost of mailing, will be mailed to you at the address provided on the receipt via Certified U.S. Mail, Return Receipt Requested. Inventoried money which is less than the cost of mailing will not be returned by mail. If your current address is different from the address listed on your receipt, you must report your new address to ERPS at **(312) 746–6777**, to ensure that all future notices about your rights and the status of your property are sent to the correct address. Checks not cashed within 90 days are void. These funds are still available at ERPS for seven years after the date of the seizure of the money after which time it will be considered abandoned under Illinois law.

**Property Held for Evidence or Investigation That May Be Subject to Forfeiture Under Federal, State or Local law:**
If your receipt is marked "Hold for Investigation and/or Evidence" and/or the incident involves a forfeitable offense (including narcotics, gambling, or prostitution offenses), your property may be subject to forfeiture under federal, state, or local law. To find out whether your property is subject to forfeiture, you may contact the Asset Forfeiture Unit at **(312) 746–7630**, Monday through Friday, 8:00 a.m. to 4:00 p.m. (closed holidays). If your property is subject to forfeiture, a forfeiture probable cause hearing will be held **within 14 days** of the seizure of the property at the **Richard J. Daley Center, Room 1707, 50 W. Washington, Chicago, Illinois 60602. Probable cause hearings are held on Mondays and Wednesdays at 1:30 p.m.** (except on holidays). To learn the exact date of the forfeiture probable cause hearing relating to your property, contact the Office of the Cook County State's Attorney at **(312) 603–6462**, Monday through Friday, 8:30 a.m. to 4:30 p.m. (closed holidays). For information regarding your rights, see the relevant Illinois statute for narcotics forfeitures (725 ILCS 150/3.5) and money laundering (720 ILCS 5/29–B–1(h)). Additional information is available at www.ChicagoPolice.org. If your property may be returned to you, the CPD will send a letter to the address provided on the receipt directing you how to recover your property. If forfeiture of your property is sought, notice of those proceedings will be provided by the Office of the Cook County State's Attorney. If your current address is different from the address listed on your receipt, it is important that you report your new address to the Asset Forfeiture Unit at **(312) 746–7630**, to ensure that all future notices about your rights and the status of your property are sent to the correct address.

HICAGO POLICE DEPARTMENT
PD-34.523 (REV. 10/09)

INV NO 15964101 | PKG NO 7069857 | 009 | 15964101

DATE RECOVERED: 30-MAY-2026

RD JK274549

RE-INVENTORY OF:

## DESCRIPTION OF PROPERTY

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY |
|---|---|---|
| 4901570 | 1 | OTHER : PIONEER DJ EQUIPMENT S/N: DLMP010759CC |
| 4901571 | 1 | OTHER : PIONEER DJ EQUIPMENT S/N: DJMP007323CC |
| 4901572 | 1 | OTHER : PIONEER DJ EQUIPMENT S/N: DLMP010753CC |
| 4901573 | 1 | OTHER : PIONEER DJ EQUIPMENT S/N: DLMP010749CC |
| 4901574 | 1 | OTHER : PIONEER DJ EQUIPMENT S/N: EJMP001163CC |

COMMENTS:

$ INVENTORY AMT

**EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY**

Court Date 30-JUN-2026
Court Branch ADMIN

CURRENCY:

IUCR: 5013 OTHER OFFENSE VIOLATION OF SUMMARY CLOSURE
CHARGE TYPE:
STATE CHARGES: 4-156-300
INCHOATE: OFFENSE AS CITED

RECOVERED/SEIZED FROM - NAME KULA, CHRISTOPHER
AT 4025 S WESTERN AVE CHICAGO, IL 60632
☐ DECEASED ☐ ARRESTED
BEAT OF RECOVERY 921

OWNER'S NAME KULA, CHRISTOPHER
ADDRESS
TELEPHONE NO.

FOUND BY - NAME SALDANA, RENE Star: 15720
ADDRESS
TELEPHONE NO.
[x] CHECK IF C.P.D.

SEE COPY 4 FOR NOTICE TO FINDER

[x] HOLD FOR INVESTIGATION AND/OR EVIDENCE
(IF NOT NEEDED FOR INVESTGATION/EVIDENCE, LEAVE BLANK)
INVESTIGATING OFFICER - SALDANA, RENE
STAR NO. 15720
UNIT 009

1st OFFICER'S NAME SALDANA, RENE
STAR NO. 15720
SIGNATURE Electronic Approval
UNIT 009

☐ PROPERTY AVAILABLE FOR RETURN TO OWNER

☐ TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED)
(THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)

2nd OFFICER'S NAME PINEDA, ALEXANDRA
STAR NO. 14247
SIGNATURE Electronic Approval
UNIT 009

INITIAL DESTINATION OF PROPERTY: ERPS

VIA ☐ POLICE MAIL ☐ RECOVERING UNIT PERSONNEL
[x] E & RPS PICKUP ☐ EVID./LAB TECHNICIAN

APPROVING DESK SERGEANT FLISK, MARGARET
STAR NO. 2682
DATE 30-MAY-2026
TIME 03:06

Created by: PC0CA09

**COPY 4 - GIVE OR SEND TO FINDER, ARRESTEE OR OWNER**

Printed by: PC0W164 30-MAY-2026 14 46

## Notice to Property Owner

This Property Inventory form is your receipt for property inventoried by the Chicago Police Department ("CPD"). When you received this receipt, you should have also received a form entitled NOTICE TO PROPERTY OWNER (the "Notice") explaining how you may get back inventoried property. If you did not receive the Notice, return to the CPD facility where your property was inventoried and ask Desk Personnel for the Notice. A complete copy of the Notice is also available at www.ChicagoPolice.org. If you have further questions, please contact the CPD Evidence and Recovered Property Section at 312-746-6777.

**NOTICE TO FINDER:** Lost or Abandoned Property will be treated in accordance with 765 ILCS 1030, which does not provide for a return of found property to the finder.

### ARRESTEE INFORMATION

SEIZURE WITHOUT SEARCH WARRANT- (725 ILCS 5/108-2)

GIVE THIS COPY TO ARRESTEE.

SEIZURE WITH SEARCH WARRANT - (725 ILCS 5/108-10)
ATTACH THIS COPY TO SEARCH WARRANT.

# EXHIBIT 2

# SCHEDULE OF EQUIPMENT SEIZED AUGUST 16, 2026

*Kula v. City of Chicago*

The Chicago Police Department prepared no inventory of the property described below and tendered no inventory to Mr. Kula. No CPD inventory number has been assigned to any of it. This schedule is furnished because the City's own records do not identify the property the City is holding.

| QTY | ITEM |
|---|---|
| **AUDIO — LOUDSPEAKERS AND SUBWOOFERS** | |
| 2 | Turbosound IQ18 subwoofers |
| 2 | Turbosound IQ15 tops |
| 2 | QSC 18-inch subwoofers |
| 2 | QSC 12-inch tops |
| 4 | RCF 18-inch subwoofers |
| 5 | RCF speakers |
| 2 | Speaker poles |
| **DJ MEDIA PLAYERS** | |
| 2 | Pioneer CDJ-3000 |
| 2 | Pioneer CDJ-2000NXS2 |
| **LIGHTING AND CONTROL** | |
| 12 | ADJ uplights |
| 1 | ADJ Wolfmix lighting controller, with flight case |
| **CABLING AND POWER** | |
| 50 | XLR cables |
| 50 | powerCON cables |
| 50 | IEC cables |
| 10 | Ethernet cables |
| 10 | RCA cables |
| 10 | Extension cords |
| 4 | trueCON cables |
| **CASES** | |
| 5+ | Flight cases, miscellaneous |

*Nineteen line items, including seventeen (17) loudspeakers and subwoofers. Equipment seized at 4041 South Emerald Avenue, Chicago, on August 16, 2026, and impounded with the vehicles in which it had been loaded.*

# EXHIBIT 3

CHICAGO POLICE DEPARTMENT

# ORIGINAL CASE INCIDENT REPORT

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03)-C

**RD #:** JJ491046
Case ID: 14030192 casr201
**EVENT #:** 2532001063

## INCIDENT

### APPROVAL COMPLETE

**IUCR:** 2250 - Liquor Law Violation - Liquor License Violation

5011 - Other Offense - License Violation

**Occurrence Location:** 54 S Western Ave BASEMENT
Chicago IL 60612
096 - Abandoned Building - Abandoned Building

**Beat:** 1125

**Unit Assigned:** 1211
**RO Arrival Date:** 16 November 2025 02:25

**Occurrence Date:** 16 November 2025 01:40

## NON-OFFENDER(S)

### VICTIM - Government

**Name:** **CITY OF CHICAGO-D. RODRIGUEZ**
2350 W Ogden Ave 2ND FL. **Beat:** 1233
Chicago, Illinois 60608
312 - 743 - 1562
**CPD Officer:** No

### Other Communications and Availability

**Phone - Business :** 312-743-1562
**Available Time** 00:01:00 - 23:59:00

### VICTIM - Government

**Name:** **CITY OF CHICAGO-CESAR RAVELO**
2350 W Ogden Ave 2ND FL. **Beat:** 1233
Chicago, Illinois 60608
312 - 743 - 5185
**CPD Officer:** No

### VICTIM - Government

**Name:** **CITY OF CHICAGO-JOSEPH SNEED**
2350 W Ogden Ave 2ND FL. **Beat:** 1233
Chicago, Illinois 60608
312 - 743 - 1562
**CPD Officer:** No

### Other Communications and Availability

**Phone - Business :** 312-743-9106
**Available Time** 00:01:00 - 23:59:00

## SUSPECT(S)

### Suspect # 1

**Name:** **UNKNOWN 1, Unknown 1**

### Demographics

Unknown
Unknown / Refused
Unknown Eyes
Unknown Hair
Unknown Hair Style
Unknown Complexion

RD #: JJ491046



powered by CLEAR technology

**Chicago Police Department - Incident Report** RD #: JJ491046

## SUSPECT(S)

## RELATIONSHIP

| | | | | |
|---|---|---|---|---|
| CITY OF CHICAGO-D. RODRIGI | ( Victim ) | is a No Relationship of | UNKNOWN 1, Unknown 1 | ( Offender ) |
| CITY OF CHICAGO-CESAR RAV | ( Victim ) | is a No Relationship of | UNKNOWN 1, Unknown 1 | ( Offender ) |
| CITY OF CHICAGO-JOSEPH SN | ( Victim ) | is a No Relationship of | UNKNOWN 1, Unknown 1 | ( Offender ) |

## OTHER PROPERTIES

**Property #1**

**Quantity:** 15

**Inventory #:** 15851762

**Description:** Dj Equipment

**Color:** Black

**Property Type:** Recording-Audio/Visual

**Used as Weapon?** No
**Taken/Stolen?** No
**Recovered?** No
**Seized?** No
**Unknown Status?** No

## NARRATIVES

EVENT # 01063 BWC RECORDED EVENT. R/O'S DID NOT REVIEW FOOTAGE PRIOR TO COMPLETING THIS REPORT. (IN SUMMARY) R/O'S RESPONDED TO ASSIST DEPT. OF BUSINESS AFFAIRS AND CONSUMER PROTECTION INVESTIGATORS [V] CITY OF CHICAGO-D. RODRIGUEZ , [V] CITY OF CHICAGO-JOSEPH SNEED AND [V] CITY OF CHICAGO-CESAR RAVELO ON A ILLEGAL LARGE GATHERING AT 54 S. WESTERN AV. UPON ARRIVAL R/O'S, BT#1223, BT #1210 AND OTHER ASSISTING UNITS DISCOVERED AN ILLEGAL RAVE PARTY IN THE BASEMENT AT ABOVE ADDRESS ATTENDED BY APPROXIMATELY 300 + INDIVIDUALS. THE SMOKE FILLED BASEMENT HAD A FULL DJ EQUIPMENTS, MAKESHIFT LIQUOR BAR AND PARTY LIGHTINGS. THE BUILDING IS CURRENTLY ABANDONED AND IS NOT LICENSED FOR ANY LARGE GATHERING AND/OR SERVE/SELL LIQUOR/ALCOHOLIC BEVERAGES. THE PARTY WAS DISSOLVED AND THE ATTENDEES DISPERSED. THE DJ AND PARTY ORGANIZER FLED WITH THE CROWD LEAVING THEIR DJ EQUIPMENT AND LIGHTING BEHIND. SEVERAL DJ EQUIPMENT WERE GATHERED, INVENTORIED AND HELD FOR INVESTIGATION. DJ EQUIPMENTS WERE INVENTORIED UNDER INV#'S 15851762, 15851778, 15851782 AND 15851789. PER [V] CITY OF CHICAGO-D. RODRIGUEZ , [V] CITY OF CHICAGO-JOSEPH SNEED AND [V] CITY OF CHICAGO-CESAR RAVELO SEVERAL PUBLIC PLACE AND LIQUOR ORDINANCES WERE VIOLATED AND CITATIONS PENDING AWAITING OFFENDERS IDENTIFICATION. AN INDIVIDUAL BY THE NAME OF [redacted] CLAIMING TO BE THE OWNER OF A DJ EQUIPMENT RENTAL COMPANY (KALGO INC. ) ARRIVED AT 012 DISTRICT ATTEMPTING TO RETRIEVE SAID EQUIPMENT. [redacted] WAS INFORMED BY BT#1210 THAT HE WON'T BE ABLE TO RETRIEVED THE EQUIPMENT BUT HE CAN ATTEND THE ADMINISTRATIVE HEARING AT 400 S. SUPERIOR ONCE CITATIONS ARE ISSUED BY BUSINESS AFFAIRS AND CONSUMER PROTECTIONS OFFICERS. NO VIN WAS GENERATED FOR THIS INCIDENT.
NOTIFICATION: FIELD SERGEANT, CHRIS BANE, Beat#: 1210, Star#: 918, Emp#: [redacted] Date: 16-NOV-2025, Time: 01:59,

## PERSONNEL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Assisting Officer | 11892 | [redacted] | **BRITO, Jesse,** | [redacted] | 16 Nov 2025 03:21 | 012 | 1223 |
| Assisting Officer | 13882 | [redacted] | **PINA, Luz, B** | [redacted] | 16 Nov 2025 03:21 | 012 | 1223 |
| Reporting Officer | 3225 | [redacted] | **BOURDEAU, Roger, P** | [redacted] | 16 Nov 2025 03:21 | 012 | 1211 |
| Reporting Officer | 18374 | [redacted] | **CALICDAN, Wilbur, T** | [redacted] | 16 Nov 2025 03:21 | 012 | 1211 |
| Supervisor - On Scene | 918 | [redacted] | **BANE, Chris, J** | [redacted] | 16 Nov 2025 03:21 | 017 | 1210 |

# EXHIBIT 4

# INVESTIGATIONS REPORT

**NAME:** NICKOLAS A LAGOWSKI

**ADDRESS:** 8 N. Western Ave., Floor Bsmnt, Apt./Suite 1e
Chicago, Il 60612

**TYPE OF INVESTIGATION:** SP

**DATE/TIME OF INVESTIGATION:** November 16, 2025 01:25 AM

**ON-SITE PERSONNEL:** **Department of Business Affairs & Consumer Protection- Business Compliance Enforcement**
Joseph Sneed, Business Compliance Manager STAR #114
Daniel Rodriguez, Business Compliance Supervisor STAR #345
Cesar Ravelo, Business Compliance Investigator STAR #383

**The Chicago Police Department (12th District)**
Sergeant Bane STAR #21793
Various 12th District Patrol Officers

**Department of Buildings**
Jesus Vasquez, Buildings Inspector

**LICENSES HELD:**
None

**PERMITS HELD:**
None

**TAXES REGISTERED FOR:**
None

**INVESTIGATIONS RESULT:**
Cease And Desist Forthwith Order: Public Place of Amusement (Notice # CDF25321383M061)
Cease And Desist Forthwith Order: Tavern (Notice # CDF25321383M062)
Department Of Administrative Hearing Citation: Public Place of Amusement (Citation # RB72500504)
Department Of Administrative Hearing Citation: Tavern (Citation # RB72500504)
Department of Administrative Hearing Citation: Indoor smoking (Citation # RB72500505)
Department Of Administrative Hearing Citation: Failure to Display (Citation # RB72500505)
Cease And Desist Forthwith Order: Limited Business (Notice # CDF25320383M058)
Department Of Administrative Hearing Citation: Limited Business (Citation # RB72500501)
Department Of Administrative Hearing Citation: Failure to Display (Citation # RB72500501)
Cease And Desist Forthwith Order: Public Place of Amusement (Notice # CDF25320383M060)
Department Of Administrative Hearing Citation: Public Place of Amusement (Citation # RB72500503)
Department Of Administrative Hearing Citation: Failure to Display (Citation # RB72500503)
Notice Of Violation: Limited Business (Notice # NOV25321383M063)

**INVESTIGATIONS FINDINGS:**
The Department of Business Affairs and Consumer Protection (BACP) – Business Compliance Enforcement Division responded to 2400 W Madison St in regard to a complaint of an unlicensed business at the commercial location. Investigator Ravelo conducted the investigation on 11/16/2025 at approximately 01:25 AM. BACP Manager Joseph Sneed, Supervisor Daniel Rodriguez, the Department of Buildings, and the Chicago Police Department were on the scene for assistance during the investigation.

A query search was conducted in the Integrated Revenue Information System (IRIS), which resulted in no business registered with the City of Chicago at the location.

At the time of the investigation, the business was open and operating, with multiple patrons entering and exiting through the doorway of Suite 1E located at 8 N Western Ave. Upon arrival, lookouts were observed guiding patrons from 50 N Western Ave to the doorman at 8 N Western Ave. Once CPD was observed, they immediately closed the door, preventing CPD from making entry. Building Inspector Vasquez made contact with a tenant who stated that Redline has been hosting numerous events at the 8 N Western Suite. The tenant stated that Redline had a lease with the building owner, and that was all the information they knew. Music could be heard emanating from the closed door and abruptly stopped.

A short time later, the door opened and patrons began exiting the premises. As a precaution, BACP did not enter the premises until the doorway was cleared of patrons. Upon the initial entry, Investigator Ravelo, Supervisor Rodriguez, Manager Sneed, and Sergeant Blaine counted approximately 1000 patrons in attendance, which was also confirmed by Inspector Vasquez, who further stated that only 1 entrance and exit were used for all to enter and exit.

Investigator Ravelo observed the following: It should be noted that the premises consisted of 2 lower levels of the basement. The 1st level of the basement consisted of 1 vendor (Evol Chicago) set up with tables and displayed general merchandise for sale (1 transaction was observed, $6.00 payment, various buttons, lanyards, hand fan), the vendor displayed an expired vendor's permit from Bridgeview, IL. The agents stated that the owner sent them to work at the location and were under the impression that it was a licensed venue. Upon request, they contacted Mikhail Pavelko (Business Owner), who stated that he was invited via social media to vend at the location, which he thought was a licensed venue. Mr. Pavelko stated that he could not share who invited him to the location since it was a vendor forum that all vendors use to vend at various locations.

There was a DJ station with a mixing board, mounted speakers, no DJ was present; however, a patron was observed unplugging wires from the mixing board to depart with it. The patron left it when questioned and departed without incident. A stocked bar area with a posted menu with pricing and various alcoholic and non-alcoholic beverages stored under the bar and in a vault, various tobacco wrappers strewed about the floor (the scent of lit tobacco was eminent throughout the premises). No further business activity was observed at the location. The 2nd lower level of the basement consisted of 2 DJ stages with 1 laptop, various commercial-grade speakers, lighting, and a storage area with additional equipment. CPD inventoried various DJ equipment and recorded it under RD# JJ491046.

Per Manager Sneed, no action would be taken at this time since no promoter, host, or agent could be positively identified during the investigation.

The Department of Buildings' Inspector Vasquez identified Dangerous and Hazardous conditions, including but not limited to:

- Basement and Sub-basement: Missing panic hardware at exit doors, various locations
- Rear Exit doors obstructed by storage
- Insufficient exiting, over 1,000 occupants
- No CO2 detectors
- No fire extinguishers
- Provide documentation of work completion and finalize permit or obtain new plans and permits for the current layout. Previous permanent layout unknown, including large assembly use.

CPD notified Manager Sneed that the owner of the DJ equipment had arrived on the scene, attempting to retrieve his equipment, and directed him to the 12th District. Manager Sneed responded to the 12th District, where he met with Christopher T. Kula. Kula stated that he rented his DJ equipment to Charles R. Riecke for $600.00. Kula provided an invoice with Riecke's information. Per Kula, Riecke then rented the equipment to Nickolas A. Lagowski, who was identified as the promoter for RED LINE, promoting the healing corner event. It should be noted that Kula was cooperative and provided the contact information for both Lagowski (who resides at the premises) and Riecke.

BACP and DOB posted closure orders. Pictures have been attached for reference. The investigation concluded at approximately 03:45 AM.

Upon further investigation, the following enforcement was issued via mail to each person separately:
Lagowski:

- Cease And Desist Forthwith Order: Public Place of Amusement (Notice # CDF25321383M061)
- Cease And Desist Forthwith Order: Tavern (Notice # CDF25321383M062)
- Department Of Administrative Hearing Citation: Public Place of Amusement (Citation # RB72500504)
- Department Of Administrative Hearing Citation: Tavern (Citation # RB72500504)
- Department of Administrative Hearing Citation: Indoor smoking (Citation # RB72500505)

- Department Of Administrative Hearing Citation: Failure to Display (Citation # RB72500505)

EVOL CHICAGO
- Cease And Desist Forthwith Order: Limited Business (Notice # CDF25320383M058)
- Department Of Administrative Hearing Citation: Limited Business (Citation # RB72500501)
- Department Of Administrative Hearing Citation: Failure to Display (Citation # RB72500501)

Riecke:
- Cease And Desist Forthwith Order: Public Place of Amusement (Notice # CDF25320383M060)
- Department Of Administrative Hearing Citation: Public Place of Amusement (Citation # RB72500503)
- Department Of Administrative Hearing Citation: Failure to Display (Citation # RB72500503)

Kula:
- Notice Of Violation: Limited Business (Notice # NOV25321383M063)

An abatement notice was issued to the property owner, 2400 W Madison LLC, via mail.

**PREVIOUS INVESTIGATIONS RESULTS:**
None

**REFERRALS SENT:**
None

**REPORTING INVESTIGATOR:** Cesar Ravelo

# EXHIBIT 5

# IN THE CITY OF CHICAGO, ILLINOIS
# DEPARTMENT OF ADMINISTRATIVE HEARINGS

I certify this order was deposited in the mail at 740 N. Sedgwick St., Chicago, IL on or before the date stamped below before 5:00pm in an envelope addressed to each respondent at each address listed on this order with postage fully prepaid.
ORDER MAILED JAN 09 2026
Dept. of Administrative Hearings Clerk's Initials

**CITY OF CHICAGO**, a Municipal Corporation, Petitioner, )
v. )
)
Riecke, Charles R. )
8 N WESTERN AV 1E )
CHICAGO, IL 60612 )
, Respondent. )

Address of Violation:
8 N Western

Docket #: 25RV003701

Issuing City
Department: Business Affairs and Consumer Protection

**FINDINGS, DECISIONS & ORDER**

This matter coming for Hearing, notice given and the Administrative Body advised in the premises, having considered the motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this tribunal finds by a preponderance of the evidence and rules as follows:

| *Finding* | *NOV#* | *Count(s)* | *Municipal Code Violated* | *Penalties* |
|---|---|---|---|---|
| City non-suit | RB72500503 | 2 | 4-4-210 License insignia--Display. | $0.00 |
| Liable - By plea | RB72500503 | 1 | 4-156-300 License--Required. (Public Places of Amusement) | $400.00 |

**Sanction(s):**

Storage Fee
Tow Fee

**Admin Costs:** $40.00
**JUDGMENT TOTAL:** $440.00
**Balance Due:** $440.00

Respondent is ordered to come into immediate compliance with any/all outstanding Code violations.

ENTERED: ______________________ 69 Jan 2, 2026
Administrative Law Judge ALO# Date

**This Order may be appealed to the Circuit Court of Cook Co. (Daley Center 6th Fl.) within 35 days by filing a civil law suit and by paying the appropriate State mandated filing fees.**

**Pursuant to Municipal Code Chapter 1-19, the city's collection costs and attorney's fees shall be added to the balance due if the debt is not paid prior to being referred for collection.**

# IN THE CITY OF CHICAGO, ILLINOIS
# DEPARTMENT OF ADMINISTRATIVE HEARINGS

| | |
|---|---|
| **CITY OF CHICAGO**, a Municipal Corporation, Petitioner, ) | Address of Violation: 8 N Western |
| v. ) ) | |
| Riecke, Charles R. )<br>8 N WESTERN AV 1E )<br>CHICAGO, IL 60612 )<br>, Respondent. ) | Docket #: 25RV003701<br><br>Issuing City Department: Business Affairs and Consumer Protection |

**FINDINGS, DECISIONS & ORDER**

This matter coming for Hearing, notice given and the Administrative Body advised in the premises, having considered the motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this tribunal finds by a preponderance of the evidence and rules as follows:

| *Finding* | *NOV#* | *Count(s)* | *Municipal Code Violated* | *Penalties* |
|---|---|---|---|---|
| City non-suit | RB72500503 | 2 | 4-4-210 License insignia--Display. | $0.00 |
| Liable - By plea | RB72500503 | 1 | 4-156-300 License--Required. (Public Places of Amusement) | $400.00 |

**Sanction(s):**

Storage Fee
Tow Fee

**Admin Costs:** $40.00

**JUDGMENT TOTAL:** $440.00

**Balance Due:** $440.00

Respondent is ordered to come into immediate compliance with any/all outstanding Code violations.

ENTERED: [signature] 69 Jan 2, 2026
Administrative Law Judge ALO# Date

**This Order may be appealed to the Circuit Court of Cook Co. (Daley Center 6th Fl.) within 35 days by filing a civil law suit and by paying the appropriate State mandated filing fees.**

**Pursuant to Municipal Code Chapter 1-19, the city's collection costs and attorney's fees shall be added to the balance due if the debt is not paid prior to being referred for collection.**

# EXHIBIT 6

P/C C1,980
-$540
$440

107

IN THE CITY OF CHICAGO
DEPARTMENT OF ADMINISTRATIVE HEARINGS

*mcns all other counts

________________ HEARINGS DIVISION
________________ SECTION

CITY OF CHICAGO, a Municipal Corporation )
(by the Department of ________________) )
Petitioner, )
v. )
EVOL Collective LLC )
8 N. Western Ave 1B, Basement )
Chicago, IL 60612 Respondent, )

Docket # 25RJ003700

Citation # ________________

## APPEARANCE FOR RESPONDENT

I, Mikhail Pavelko, enter my appearance on behalf of the above-captioned Respondent and further state, under oath and upon penalty of law, that:

**IF RESPONDENT IS AN INDIVIDUAL, PLEASE SELECT ONE OF THE FOLLOWING:**

X I am the above-captioned Respondent

____ I am the attorney for the above-captioned Respondent, with authority to represent Respondent in this proceeding

____ I am not the above-captioned Respondent, nor the attorney for Respondent. I have been expressly authorized by Respondent to appear on Respondent's behalf in this proceeding

____ None of the above (please explain) ________________.

*****PLEASE SIGN, DATE, AND COMPLETE ADDRESS/PHONE INFORMATION BELOW**

**IF RESPONDENT IS A CORPORATION, PLEASE SELECT ONE OF THE FOLLOWING:**

X I am a president, vice-president, registered agent, director, manager, department manager, supervisor, or other person responsible for managing the affairs of the above-captioned Respondent and have authority to represent Respondent in this proceeding

____ I am the attorney for the above-captioned Respondent, with authority to represent Respondent in this proceeding

____ I am not the attorney for the above-captioned respondent, nor a person responsible for managing the Respondent's affairs. I have been expressly authorized by Respondent to appear on Respondent's behalf in this proceeding.

____ None of the above (please explain) ________________.

*****PLEASE SIGN, DATE, AND COMPLETE ADDRESS/PHONE INFORMATION BELOW**

Mikhail Pavelko
**Signature**

1051 Cumberland Ct.
**Address**

1/02/2026
**Date**

Vernon Hills, IL 60061
**City, State, Zip**

(847) 494-2076
**Phone #**

# EXHIBIT 7

CHIRICA LAW OFFICE LLC

**Vlad Chirica <vlad@chirica.law>**

## 25RV003705 - Lagowski, Nickolas A.

1 message

**Sean Varsho** <Sean.Varsho@cityofchicago.org> Fri, Feb 13, 2026 at 2:20 PM
To: Vlad Chirica <vlad@chirica.law>

Good Afternoon -

After additional review of this violation I do not believe the city has enough evidence to meet our burden. Citations RB72500504-5 will be dismissed. A copy of the order will be provided to this email once entered.

**Sean Varsho**
*(he/him/his)*
Senior Attorney, *Prosecutions and Adjudications*

BACP
Business Affairs and Consumer Protection

City Hall, Room 805, 121 N. LaSalle St., Chicago, IL 60602
Office number: (312) 742-0531

*Subscribe to our newsletter*
*Connect with BACP on Facebook, Instagram, Twitter, YouTube & LinkedIn*

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

# EXHIBIT 8

# IN THE CITY OF CHICAGO, ILLINOIS
# DEPARTMENT OF ADMINISTRATIVE HEARINGS

**CITY OF CHICAGO**, a Municipal Corporation, Petitioner,

v.

Lagowski, Nickolas A.
8 N WESTERN AV 1E
CHICAGO, IL 60612
, Respondent.

Address of Violation:
8 N Western

Docket #: 25RV003705

Issuing City
Department: Business Affairs and Consumer Protection

## FINDINGS, DECISIONS & ORDER

This matter coming for Hearing, notice given and the Administrative Body advised in the premises, having considered the motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this tribunal finds by a preponderance of the evidence and rules as follows:

| *Finding* | *NOV#* | *Count(s)* | *Municipal Code Violated* | *Penalties* |
|---|---|---|---|---|
| City non-suit | RB72500504 | 1 | 4-156-300 License--Required. (Public Places of Amusement) | $0.00 |
| | | 2 | 4-60-020 No person shall sell at retail any alcoholic liquor without a city retailer's license | $0.00 |
| City non-suit | RB72500505 | 3 | 7-32-015 Smoking is not permitted in public places including taxicab | $0.00 |
| | | 4 | 4-4-210 License insignia--Display. | $0.00 |

**Sanction(s):**

Storage Fee
Tow Fee

**Admin Costs:** $0.00

**JUDGMENT TOTAL:** $0.00

**Balance Due:** $0.00

ENTERED: [signature] 83 Feb 13, 2026

Administrative Law Judge ALO# Date

**This Order may be appealed to the Circuit Court of Cook Co. (Daley Center 6th Fl.) within 35 days by filing a civil law suit and by paying the appropriate State mandated filing fees.**

**Pursuant to Municipal Code Chapter 1-19, the city's collection costs and attorney's fees shall be added to the balance due if the debt is not paid prior to being referred for collection.**

# EXHIBIT 9

# IN THE CITY OF CHICAGO, ILLINOIS
# DEPARTMENT OF ADMINISTRATIVE HEARINGS

**CITY OF CHICAGO**, a Municipal Corporation, Petitioner,
v.

Riecke, Charles R.
8 N WESTERN AV 1E
CHICAGO, IL 60612
, Respondent.

Address of Violation:
8 N Western

Docket #: 25RV003701

Issuing City Department: Business Affairs and Consumer Protection

## FINDINGS, DECISIONS & ORDER

This matter coming for Hearing, notice given and the Administrative Body advised in the premises, having considered the motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this tribunal finds by a preponderance of the evidence and rules as follows:

| *Finding* | *NOV#* | *Count(s)* | *Municipal Code Violated* | *Penalties* |
|---|---|---|---|---|
| City non-suit | RB72500503 | 2 | 4-4-210 License insignia--Display. | $0.00 |
| Liable - By plea | RB72500503 | 1 | 4-156-300 License--Required. (Public Places of Amusement) | $400.00 |

**Sanction(s):**

Storage Fee
Tow Fee

Citation RB72500503, case number 25 RV003701, was heard and an agreement entered on January 2, 2026. Any property held related to this citation may be released if not held pursuant to other applicable federal, state, or other law, court order, or warrant that authorizes the continued hold of the property. This order is amended nunc pro tunc to January 2, 2026.

**Admin Costs:** $40.00

**JUDGMENT TOTAL:** $440.00

**Balance Due:** $0.00

Respondent is ordered to come into immediate compliance with any/all outstanding Code violations.

ENTERED: [signature] 22 Mar 10, 2026

Administrative Law Judge ALO# Date

**This Order may be appealed to the Circuit Court of Cook Co. (Daley Center 6th Fl.) within 35 days by filing a civil law suit and by paying the appropriate State mandated filing fees.**

**Pursuant to Municipal Code Chapter 1-19, the city's collection costs and attorney's fees shall be added to the balance due if the debt is not paid prior to being referred for collection.**

# EXHIBIT 10

CHIRICA LAW OFFICE LLC

Vlad Chirica <vlad@chirica.law>

# Fwd: Permanently deprived of my property.

1 message

---------- Forwarded message ---------
From: **Sean Varsho** <Sean.Varsho@cityofchicago.org>
Date: Tue, Mar 10, 2026 at 3:39 PM
Subject: Re: Permanently deprived of my property.
To: charlie riecke <charlie.riecke@gmail.com>

Mr. Riecke -

While it is my position that the final order is sufficient to show that RB72500503 has been finalized, the court was willing to add language to the order to reflect your concern. Please see attached.

Be well.

**Sean Varsho**
*(he/him/his)*
Senior Attorney, *Prosecutions and Adjudications*

BACP
Business Affairs and Consumer Protection

City Hall, Room 805, 121 N. LaSalle St., Chicago, IL 60602
Office number: (312) 742-0531

*Subscribe to our newsletter*
*Connect with BACP on Facebook, Instagram, Twitter, YouTube & LinkedIn*

**From:** charlie riecke <charlie.riecke@gmail.com>
**Sent:** Monday, March 9, 2026 10:41 AM
**To:** Sean Varsho <Sean.Varsho@cityofchicago.org>
**Subject:** Permanently deprived of my property.

[Warning: External email]

Hello Mr.Varsho. My name is Charles Riecke and I am emailing you regarding property that's being held for a case that was settled on 01/02/2026.

This has been an ongoing process for months and I'm being permanently deprived of my property.

The docket number for the case was: 25RV003701

Please advise on the next steps to take.

All the best,

Charles

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

**Riecke, Charles R.pdf**
116K

# EXHIBIT 11

# VEHICLE IMPOUNDMENT/ SEIZURE REPORT

CHICAGO POLICE DEPARTMENT

| | | |
|---|---|---|
| 1. BEAT OF ASSIGNMENT: 0425 | 2. RD NO. / CITATION NO.: JK3M1090 | 3. STREETS & SANITATION NO.: 057147 |
| 4. BEAT OF OCCURRENCE: 0425 | 5. LOCATION OF VEHICLE: 4170 S HALSTED ST | |

IT IS ALLEGED THAT THE LISTED VEHICLE, OWNED BY THE LISTED OWNER OF RECORD, WAS USED IN VIOLATION OF THE FOLLOWING SECTION(S) OF THE ILLINOIS COMPILED STATUTES (ILCS) OR THE MUNICIPAL CODE OF CHICAGO (MCC).

**6. VIOLATION(S)**

**ILCS VIOLATIONS**

SEIZURE SUBJECT TO FORFEITURE REVIEW. ATTACH KEYS TO VEHICLE PER DEPARTMENT SPECIAL ORDER S07-03-06. SELECT ONLY ONE ILCS VIOLATION.

- ☐ MORE THAN 2 GRAMS OF CONTROLLED SUBSTANCE - SEIZURE (720 ILCS 570/505)
- ☐ FELONY VIOLATION OF THE CANNABIS CONTROL ACT - SEIZURE (720 ILCS 550/12)

INDICATE AMOUNT AND TYPE FOR ABOVE VIOLATION:
ESTIMATED AMOUNT OF SUBSTANCE:
TYPE OF SUBSTANCE:

- ☐ OTHER ILCS SEIZURE:

**MCC VIOLATIONS**

RETURN KEYS TO DRIVER PER DEPARTMENT SPECIAL ORDER S07-03-05 UNLESS SEIZURE FOR ILCS VIOLATION ALSO APPLIES. SELECT ALL VIOLATIONS THAT APPLY.

- ☐ IMPOUNDMENT - (CONTROLLED SUBSTANCE IN VEHICLE, SALE, PURCHASE OR ATTEMPT) MCC 7-24-225(a)
  ESTIMATED AMOUNT OF SUBSTANCE:
  TYPE OF SUBSTANCE:
- ☐ UNLAWFUL FIREARM - MCC 8-20-070
- ☐ DRIVING WHILE INTOXICATED - MCC 7-24-226
- ☐ DRIVING WITH A SUSPENDED/REVOKED LICENSE (NOT FOR FINE/EMISSIONS) - MCC 9-80-240
- ☐ FALSE OR STOLEN VEHICLE REGISTRATION MCC 9-80-220(c)
- ☐ STREET SOLICITATION FOR PROSTITUTION MCC 8-8-060
- ☐ DRAG RACING MCC 9-12-090
- ☐ PUBLIC PASSENGER VEHICLE - UNLICENSED
  - ☐ MCC 9-112-640 (Taxi) ☐ MCC 9-114-420 (Other)
  - ☐ MCC 9-115-240 (TNP)
- ☒ OTHER MCC IMPOUNDMENT
  DESCRIPTION: Criminal trespass
  CHARGE:

7. ADDRESS OF OFFENSE / LOCATION OF SELECTED VIOLATION(S): 4027

CITY OF CHICAGO, COUNTY OF COOK, STATE OF ILLINOIS

8. DATE AND TIME OF VIOLATION:

| 9. YEAR | 10. MAKE | 11. MODEL | 12. COLOR | 13. BODY STYLE |
|---|---|---|---|---|
| 2024 | GMC | SIANA | Multi | TRUCK |

14. VEHICLE IDENTIFICATION NUMBER (VIN): 1GTU9EF78RZ11V4051X

15. LICENSE PLATE / TRP NO.: AMS1417 STATE: AZ MO/YR EXP: 06/27 ☐ PC ☐ TRP ☒ TK ☐ ☐ NO PLATE AT TIME OF TOW

16. NAME OF VEHICLE OWNER OF RECORD: UHAUL CO OF ARIZONA

17. ADDRESS OF OWNER OF RECORD: 70 E THOMAS RD PHOENIX AZ

18. OWNERSHIP VERIFIED? ☐ YES - BY COMPUTER INQUIRY ☐ YES - OTHER ☐ NO

19. NAME OF DRIVER: UNK

20. DRIVER'S LICENSE NO. OF DRIVER: UNK STATE EXP.

21. LICENSE SUSPENDED/REVOKED ☐ NO ☐ YES

22. NAME OF VIOLATOR: UNK ☐ CHECK IF OWNER OF RECORD

23. ADDRESS OF VIOLATOR: UNK

24. IDENTITY VERIFIED? ☐ YES - BY COMPUTER INQUIRY ☐ YES - OTHER ☐ NO

25. PHONE NO. OF VIOLATOR: UNK

26. DRIVER'S LICENSE NO. OF VIOLATOR: UNK STATE EXP.

27. LICENSE SUSPENDED/REVOKED ☐ NO ☐ YES

**28. VEHICLE CONDITION**

| EXTERIOR | NO | YES | | | NO | YES | | NO | YES | |
|---|---|---|---|---|---|---|---|---|---|---|
| DOORS LOCKED | ☐ | ☐ | | HUB CAPS MISSING | ☐ | ☐ NO.___ | SPARE TIRE WITH VEHICLE | ☐ | ☐ | ☐ UNK |
| DOOR LOCKS PUNCHED | ☐ | ☐ | NO.___ | SUN ROOF MISSING | ☐ | ☐ ☐ D.N.A | TRUNK LOCKED | ☐ | ☐ | |
| EXTERIOR DAMAGED | ☐ | ☐ | | TIRE(S) MISSING | ☐ | ☐ NO.___ | TRUNK LOCK PUNCHED | ☐ | ☐ | |
| GLASS BROKEN | ☐ | ☐ | NO.___ | WHEELS MISSING | ☐ | ☐ NO.___ | OTHER - SPECIFY | | | |

| INTERIOR | NO | YES | UNK | | NO | YES | UNK | | NO | YES | UNK |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AIR BAG DAMAGED / MISSING | ☐ | ☐ | ☐ | IGNITION DAMAGED / PULLED | ☐ | ☐ | ☐ | PERSONAL PROPERTY IN VEHICLE | ☐ | ☐ | ☐ |
| CUSHIONS / SEATS MISSING | ☐ | ☐ | ☐ | INTERIOR DAMAGED | ☐ | ☐ | ☐ | INVENTORY NO.(S) | | | |
| GLOVE BOX LOCKED | ☐ | ☐ | ☐ | RADIO/AUDIO/VIDEO EQUIP. MISSING | ☐ | ☐ | ☐ | MILEAGE | | | |

**29. NARRATIVE** (DESCRIBE THE CIRCUMSTANCES THAT SUPPORT EACH IMPOUND/SEIZURE VIOLATION AND ANY VEHICLE CONDITION ITEMS (BOX 29) THAT REQUIRE FURTHER EXPLANATION.)

Event # 0047 in summary R/Os a/c impounding above vehicle due to owner on scene relating that vehicle was not allowed on his property involved in criminal trespass to land.

A COPY OF THE VEHICLE IMPOUNDMENT/SEIZURE REPORT WAS PROVIDED TO: ☐ VEHICLE OWNER ☐ VEHICLE DRIVER ☐ OTHER - SPECIFY

PURSUANT TO 2-14-132(j) MCC, A WARNING NOTICE THAT THE VEHICLE IS SUBJECT TO SEIZURE FOR PURPOSES OF IMPOUNDMENT HAS BEEN AFFIXED TO THE VEHICLE'S: ☒ DRIVER'S SIDE FRONT DOOR WINDOW ☐ OTHER - SPECIFY

30. INVESTIGATIVE UNIT (NO.) NOTIFIED: HD
31. PERSON NOTIFIED: TURNER STAR NO. DATE/TIME: 16AUG26 0232
32. DATE/TIME IMPOUND ORDERED: 16AUG26

I HEREBY DECLARE AND AFFIRM, UNDER PENALTY OF PERJURY, THAT THE FACTS STATED HEREIN ARE ACCURATE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND/OR BELIEF.

33. REQUESTING/ATTESTING MEMBER'S NAME (PRINT): Pinela STAR NO.: 1-12417 UNIT NO.: 009 UNIT PHONE NUMBER: 3127471200 PAX
34. DATE/TIME INVESTIGATION COMPLETED: 16AUG26 0254

35. REQUESTING/ATTESTING MEMBER'S SIGNATURE: [signature]
36. APPROVING SUPERVISOR'S SIGNATURE: [signature] STAR NO.: 2352 DATE/TIME: 16AUG26 0315

37. TOW DRIVER'S SIGNATURE TRUCK NO. DATE/TIME

38. ☐ GONE ON ARRIVAL - MCC 2-14-132(j): BY SIGNING MY NAME IN BOX 37 AND CHECKING THIS BOX, I HEREBY DECLARE AND AFFIRM UNDER PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND/OR BELIEF, THE VEHICLE WAS GONE UPON MY ARRIVAL TO TOW THE VEHICLE.

INVESTIGATIVE UNIT REVIEW ONLY | REVIEWED DATE | BY: | ___ LIENHOLDER ONLY ___ DECLINED ___ FORFEITURE PENDING

FOR NOTICE OF VEHICLE IMPOUNDMENT AND/OR FORFEITURE PROCEEDING AND VEHICLE RELEASE AND HEARING INFORMATION - SEE REVERSE SIDE.

CPD-34.347 (REV. 9/20) Distribution: Tow Truck Driver (White) - Respondent (Yellow) - Investigating Unit (Pink) - Requesting Unit (Goldenrod)

# NOTICE OF VEHICLE IMPOUNDMENT and/or FORFEITURE PROCEEDING

**ANY PERSON INTERFERING WITH AN IMPOUNDED VEHICLE IS SUBJECT TO ARREST AND PROSECUTION**

**Section 2-14-132 of the Municipal Code of Chicago provides a strict liability penalty up to $2,000 for removing or relocating a vehicle subject to impoundment that bears a warning notice that the vehicle is subject to seizure for impoundment.**

**VEHICLE RELEASE.** Only the owner(s) of record (title holder[s]) of an impounded vehicle may secure the release of the vehicle. The owner of record or an authorized designee must appear in person at **400 West Superior, Department of Finance, Revenue Payment Center**, between the hours of 8:30 a.m. to 4:30 p.m. (Monday through Friday, 8:30 a.m. to 4:30 p.m., closed Saturdays, Sundays and holidays) with proof of ownership (title, vehicle registration or bill of sale) and valid identification (driver's license or state identification card). Narcotics (unlawful drugs) impoundments require an additional release by the Chicago Police Department.

An impounded vehicle may be released upon payment of an administrative penalty, plus $150 for towing and $25 per day for storage. For vehicles 8,000 pounds or more, the fees are $250 for towing and $50 per day for storage. Payment may be made by cash, credit card, or certified/cashier's check. **Fees are subject to change without notice.**

**HOWEVER**, the vehicle will not be released if held pursuant to applicable state, federal, or any other law, or court order or warrant that authorizes the continued impoundment of the vehicle. In addition, no vehicle impounded for unlawful drugs under authority of Section 7-24-225 of the Municipal Code of Chicago shall be returned to the owner of record until the City receives notice from the appropriate State or federal official that (i) forfeiture proceedings will not be instituted or (ii) forfeiture proceedings have concluded and there is a settlement or court order providing that the vehicle shall be returned to the owner of record. To find out whether your vehicle is subject to forfeiture, you may contact the Chicago Police Department at **(312) 746-7146**, Monday through Friday (8:00 a.m. to 4:00 p.m., closed holidays). If your vehicle is subject to forfeiture, forfeiture proceedings will be instituted under the Drug Asset Forfeiture Procedure Act or Article 29(B) (Money Laundering) of the Criminal Code, and a forfeiture preliminary review will be held within 14 days (for unlawful drugs) or 28 days (for money laundering) of the seizure of the vehicle at **50 W. Washington, Chicago, Richard J. Daley Center, Room 1707**. The preliminary review hearings are **held on Mondays and Wednesdays at 1:30 p.m., except on holidays**. To learn the exact date of the forfeiture preliminary review hearings, contact the Office of the Cook County State's Attorney at **(312) 603-6462**, Monday through Friday (8:30 a.m. to 4:30 p.m., closed holidays). For further information regarding this preliminary review, see the relevant Illinois statute, 725 ILCS 150/3.5 (for unlawful drugs) or 720 ILCS 5/29B-9 (for money laundering). **Please note that the forfeiture procedures described in this paragraph are separate from, and in addition to, the City's administrative hearing procedures, described below.** If your current address is different from the address on your vehicle registration, it is important that you report your new address to the Chicago Police Department at **(312) 746-7146** to ensure that all future notices about your rights and the status of your vehicle are sent to the correct address.

**NOTICE OF RIGHT TO A PRELIMINARY ADMINISTRATIVE HEARING.** In accordance with Section 2-14-132 of the Municipal Code of Chicago, the owner of record (title holder) of the impounded vehicle may request a preliminary impoundment hearing to determine whether there is probable cause for impoundment. A request for preliminary hearing must be made **within 15 days** of the impoundment at **the Information Desk of the Central Hearing Facility, 400 W. Superior**, Monday through Friday (9:00 a.m. to 3:30 p.m., closed weekends and holidays).

**NOTICE OF RIGHT TO A FULL ADMINISTRATIVE HEARING.** In accordance with Section 2-14-132 of the Municipal Code of Chicago, the owner of record (title holder) of an impounded vehicle may contest the impoundment by filing a written request for a hearing with the Department of Administrative Hearings. The request may be filed in-person or by mail no later than 15 days after the date that the owner notification was mailed by the City. If the owner received the notification of impoundment by personal service, the request for a hearing must be filed within 15 days of such service. In-person requests may be filed at **the Central Hearing Facility, 400 W. Superior Street** (9:00 a.m. to 3:30 p.m., closed weekends and holidays). You may also mail your request to **the Department of Administrative Hearings, 740 N. Sedgwick, 2nd Floor, Chicago, Illinois 60654.** An owner who files a timely hearing request will be notified of their hearing date and time by mail. Request for hearing forms are available from the Department of Administrative Hearings.

If the owner does not file a timely request for a full hearing, or if the owner requests a hearing but fails to appear at the scheduled hearing, a default finding of liability may be entered and an administrative penalty, storage, and towing fees may be assessed. If you paid to redeem your vehicle and do not timely request a hearing or do not appear for a scheduled hearing, payment will be deemed an admission of liability and no hearing will be conducted. **If the vehicle is not retrieved within 45 days of a final judgment, the vehicle and its contents may be disposed of by the City.**

**NOTICE OF VEHICLE REDEMPTION.** If you file a Motion to Set Aside a default judgment in a vehicle impoundment case more than 45 days after the date of the default judgment, or if you fail to redeem your vehicle from the pound **within 45 days** of the entry of the default judgment, **your vehicle may no longer be available for redemption.** Under Section 2-14-132(d) of the Municipal Code of Chicago, any vehicle that remains in the auto pound more than 10 days after the expiration of time during which the owner of record may seek judicial review of a finding of liability (35 days) may be deemed unclaimed and **the vehicle and its contents may be disposed of by the City.** Even if your vehicle has been disposed of and cannot be redeemed, you may still be responsible for the administrative penalty, court costs, and towing and storage fees related to the impoundment.

- **For questions regarding redeeming the vehicle, call the Vehicle Impoundment Unit at (312) 742-6121, Fax (312) 742-6150.**
- **For questions regarding an administrative hearing, call the Department of Administrative Hearings at (312) 742-8475, TTY (312) 742-8249.**
- **For questions regarding forfeiture hearings, call the Office of the Cook County State's Attorney at (312) 603-6462.**

# EXHIBIT 12

Chicago Police Department

**General Order G07-03**

# VEHICLE TOWING AND RELOCATION OPERATIONS

| | | | |
|---|---|---|---|
| **ISSUE DATE:** | 29 October 2014 | **EFFECTIVE DATE:** | 01 November 2014 |
| **RESCINDS:** | 01 January 2012 version | | |
| **INDEX CATEGORY:** | 07 - Processing Property | | |
| **CALEA:** | | | |

## I. PURPOSE

A. This directive:

1. outlines Department policy, procedures, and responsibilities relating to vehicle towing operations.

2. classifies types of vehicle towing operations.

3. *continues the* Vehicle Tow Report (CPD-11.413), which includes a "Respondent" copy to be given to the person in control of the vehicle being towed.

4. continues procedures for towing at Midway and O'Hare Airports.

B. Department members will refer to the Special Order entitled "Vehicle Towing and Relocation Operations" for additional procedures for the processing of vehicles.

## II. POLICY

The Department will enforce all ordinances and statutes which authorize towing, relocating, and disposing of vehicles located on the public way, within legal guidelines. Members will cooperate and assist other City departments and authorized private towing agencies during emergency and non-emergency operations while continuing to provide essential police services.

## III. GENERAL INFORMATION

A. The Department of Streets and Sanitation (S&S):

1. is charged with the responsibility to remove or authorize the removal of vehicles from any public way to an authorized auto pound, Department garage, or relocation site(s).

2. utilizes private contractors to assist in towing vehicles from City streets. Organizations engaged in towing for the City of Chicago and their tow drivers will comply with all State statutes and City ordinances.

3. has its own departmental "Vehicle Tow Reports" and "Relocation Reports." In addition, S&S personnel are authorized to issue Violation Notices to vehicles found in violation of City ordinances prior to being towed or relocated from the location. S&S is empowered by the City to use its own forms when towing or relocating vehicles.

**NOTE:** Department members will not duplicate the efforts of S&S by completing Chicago Police Department forms once the appropriate reports have been completed by S&S.

4. will enter relocated vehicle information into computer terminals as part of their responsibilities, when working independent of the Chicago Police Department.


© Chicago Police Department, October 2014

B. It is the policy of the Department of Streets and Sanitation that a vehicle subject to tow on City property will be towed once it is moved from the original location where it was parked. In situations where Department members are called to a scene to resolve a difference of opinion between a member of the public and a tow truck driver, Department members are to inform the complainant that once a vehicle is moved from the original location where the vehicle was parked, the tow will be completed.

C. Tows are provided by the Department of Streets and Sanitation (S&S) or its authorized towing agents twenty-four hours a day, seven days a week. Requests for tows will be serviced in accordance with priorities established by the Chicago Police Department.

D. City-authorized towing vehicles will display a color coded sign that is clearly marked: CITY OF CHICAGO, DEPARTMENT OF STREETS AND SANITATION, POLICE TOWING.

E. City-authorized tow truck drivers will:

1. carry an authorization card, when towing, that corresponds with the signs displayed on their tow trucks. This card authorizes the presenter to collect the Vehicle Tow and Vehicle Impoundment/Seizure Reports from the "Tow" basket in district stations.

**NOTE:** The baskets have been provided by S&S, and will be clearly marked: CITY OF CHICAGO, DEPARTMENT OF STREETS AND SANITATION, POLICE TOWING.

2. only tow vehicles to authorized designated auto pounds, unless prior approval is authorized by S&S (e.g. tow the vehicle to the district station or other designated auto pound).

3. **not** relocate vehicles unless an emergency has been declared by the City.

4. **not** tow vehicles:

a. that do not have a Vehicle Tow or Vehicle Impoundment/Seizure Report.

b. that have not been assigned an S&S towing number by OEMC.

c. until the report is approved by the appropriate supervisor and is deposited in the district station "Tow" basket.

5. **not** be allowed to make private tows, such as assisting stranded motorists, while displaying the City of Chicago tow signs.

## IV. TOW PROCEDURES

A. Department members requesting a vehicle tow will:

1. first establish if the vehicle is stolen or wanted for investigation in connection with a crime and is needed for further investigation by requesting a vehicle check via the OEMC dispatcher or, if equipped, with a portable data terminal (PDT). When it is determined that a vehicle is:

a. wanted for investigation, the assigned member will ensure that the vehicle is not touched or moved until the appropriate investigative unit is notified and instructions are received regarding the processing and towing of the vehicle.

b. stolen and the vehicle is not to be held for an investigation, the Department member assigned will follow the procedures outlined in the Department directive entitled "Vehicle Theft and Wanted Vehicle Procedures."

2. follow the procedures outlined in the Department directive entitled:

a. "Impoundment of Vehicles for Municipal Code Violations" when encountering incidents relative to impoundment of vehicles for municipal code violations.

b. "Seizure and Forfeiture of Vehicles, Vessel, and Aircraft" when encountering incidents relative to the seizure of vehicles subject to forfeiture.

c. "Repossessions" when encountering incidents relative to repossessions of vehicles.

3. in addition to other necessary reports, complete a Vehicle Tow Report (CPD-11.413). When completing the report, requesting members will:

   a. select only one vehicle tow classification.

   b. complete all the information requested by the report. A computer check of the vehicles VIN must be completed and the information recorded in the appropriate spaces.

   c. document, with specificity, the circumstances that support the request for the vehicle tow in the narrative section.

   d. attest to the information contained in the report by signing and placing their star number on the Vehicle Tow Report.

   **NOTE:** Department members will not be required to complete a Vehicle Tow Report when a vehicle is subject to impoundment or seizure and a Vehicle Impoundment/Seizure Report has been completed.

4. not operate a vehicle to be towed unless **a situation dictates its relocation prior to towing.** A member of a two-person unit may drive the vehicle to their district of assignment, district of arrest, or other police facility, as appropriate.

   a. A Department member may operate the vehicle to be towed without the owner's consent when a situation dictates its relocation.

   b. A vehicle will be parked and locked in a police facility parking lot or within close proximity of the facility where it can be legally, safely, and continuously parked.

   c. Department members will refrain from driving vehicles that present a safety hazard to themselves or members of the public (e.g., vehicles with a peeled or stripped column, anti-theft alarms that may cut off the engine, inadequate brakes, bald tires, transmission problems).

5. request a tow via OEMC to have the vehicle towed to a holding facility controlled by the City of Chicago or its agents, and:

   a. provide the OEMC dispatcher with the year, make, model, VIN, and state license plate number.

   b. indicate whether the vehicle will "roll" (either two front or two rear wheels have inflated tires) or must be towed using a "flatbed" tow truck.

   c. obtain an S&S towing number from the dispatcher. The S&S towing number will be recorded on the Vehicle Tow Report in the box provided.

      **NOTE:** The S&S towing number will be in addition to any required Records Division (RD) number, if applicable.

6. attach the vehicle keys *and fob* to the Vehicle Tow Report for all vehicles being towed for **hold for investigation and confidential VIN checks only**.

   a. Department members will attach the vehicle keys using a sealed, small Evidence Envelope (CPD-33.101), indicating the following information:

      (1) Records Division (RD) number.

      (2) Date of the tow.

      (3) Vehicle information including the year, make, model, color, and license plate or vehicle identification number, as available.

b. Department members will only attach the vehicle's keys or alarm/remote key fobs to the report. Other keys not associated with the operation or security of the towed vehicle (e.g., house key, locker keys) will be returned to the person authorized to possess the keys.

c. **ALL OTHER VEHICLE TOWS WILL NOT HAVE THE VEHICLE KEY(S) ATTACHED TO THE VEHICLE TOW REPORT.** The requesting member will ensure that keys pertaining to the vehicle are returned to the person authorized to possess the keys, (a registered owner, authorized or designated driver) or are inventoried accordingly.

7. remove and inventory personal property found within the vehicle. If keys are in the vehicle, personal property within a locked glove compartment or trunk will be removed and inventoried. The property inventory number will be indicated on the Vehicle Tow Report. In situations where personal property is discovered in a vehicle that has been towed into an auto pound, OEMC will dispatch a vehicle from the district where the auto pound is located to inventory the property in accordance with the Department directive entitled "Processing Property Under Department Control."

**NOTE:** Department members will contact the Evidence and Recovered Property Section for technical advice (24 hours) prior to towing a vehicle that contains perishable goods, such as meats or produce.

8. obtain the approval of the appropriate supervisor on the Vehicle Tow Report and:

a. give the "Respondent" copy to the person in control of the vehicle.

**NOTE:** When towing a parked vehicle, submit the "Respondent" with the "Requesting Unit" copy.

b. *for hold for investigation and confidential VIN checks, submit Vehicle Tow Report and vehicle keys and fob to the district station supervisor who will ensure safe keeping until arrival of tow truck driver.*

c. *for all other tows*, place the "Tow Truck Driver" and "Requesting Unit" copy of the Vehicle Tow Report in the Streets and Sanitation "Tow" Basket.

**NOTE:** Upon their arrival, tow truck drivers will sign the Vehicle Tow Report and leave the "Requesting Unit" copy of the report in the basket for use by district review personnel.

B. *When notified by the district station supervisor that the S&S tow truck driver is at the station and prepared to complete a tow for hold for investigation or confidential VIN check, the assigned member will report to the district station and:*

1. *receive a Department issued zip tie from the district station supervisor,*

2. *escort the Streets & Sanitation tow truck driver to the location of the towed vehicle,*

3. *upon arrival to the location of towed vehicle, zip tie the vehicle keys and fob to the vehicle steering wheel, leaving the vehicle unlocked.*

C. OEMC dispatchers will enter immediate tow data into the computer in accordance with existing procedures.

D. District desk personnel will:

1. place the marked "Tow" basket, provided by S&S, in a location accessible to Department members and tow drivers.

2. provide S&S dispatchers, (who will call via PAX) the correct number of original Vehicle Tow Reports in the tow basket at the desk. Tow truck drivers are not authorized to ascertain this same information.

3. verify the identity of the responding tow truck driver by examining their authorization card.

E. *District Station Supervisor* will ensure that:

1. Vehicle Tow Reports are filled out completely, reviewed for accuracy, and, if appropriate, approved prior to the vehicle being towed.

2. approved Vehicle Tow Reports are deposited in the marked "Tow" basket located in the district station.

3. desk personnel provide S&S dispatchers the correct number of Vehicle Tow Reports in the basket.

4. the tow truck driver retrieves the Vehicle Tow Report from the district station, signs the report, and leaves the "Requesting Unit" copy at the desk.

5. vehicles that are gone on arrival (GOA) are processed accordingly.

6. *Vehicle Tow Reports indicating "Hold - Confidential VIN Check" or "Hold for Investigation-Wanted Vehicle" have the vehicle keys and fob attached and secured until the arrival of the tow truck driver.*

7. *upon arrival of the S&S tow truck driver to tow a vehicle for hold for investigation or confidential VIN check, ensure an available unit is assigned to escort the tow truck driver to the location of the towed vehicle and upon arrival to the location of towed vehicle, zip tie the vehicle keys and fob to the vehicle steering wheel, with Department issued zip tie, leaving the vehicle unlocked.*

F. In the event OEMC is notified that a vehicle to be towed is gone on arrival (GOA), OEMC will dispatch the unit which requested the tow to the scene. If that unit is not available, the nearest available unit will be dispatched to the scene.

1. Upon verification of the GOA, the assigned member will prepare a Supplementary Report if the vehicle had been previously reported stolen or was involved in an incident requiring a case report. The assigned member will:

   a. obtain the RD number and the S&S towing number from the OEMC dispatcher, the original Vehicle Tow Report available from the tow truck driver if they are still on the scene, or the district copy available at the district station.

   b. record the required information and particulars of the GOA on the Supplementary Report indicating one copy to the Auto Desk.

   c. indicate GOA *in the narrative section of* the Vehicle Tow Report, and notify the OEMC dispatcher to cancel the tow request.

2. Upon verification of the GOA, **and no case report applies**, the assigned member will indicate GOA *in the narrative section of* the Vehicle Tow Report, and notify the OEMC dispatcher to cancel the tow request.

3. The assigned member will submit all GOA reports to their *district station supervisor*.

G. Tow of an Arrestee's Vehicle

1. A vehicle related to an arrest will be towed if the vehicle has evidentiary value; the vehicle cannot be safely driven to the detention facility by authorized police personnel; the vehicle cannot be legally, securely, and continuously parked at the scene of the arrest; or the arrestee does not authorize another person to take control of the vehicle. **An intoxicated person will not be permitted to take control of the vehicle at any time**.

   **NOTE:** Department members will indicate the appropriate violation on the Vehicle Tow Report.

2. Vehicles related to an arrest that are subject to impoundment or seizure will be processed in accordance with the procedures outlined in the Department directives entitled "Impoundment of Vehicles for Municipal Code Violations" and "Seizure and Forfeiture of Vehicles, Vessels, and Aircraft."

**NOTE:** Department members will indicate the appropriate violation on the Vehicle Impound/Seizure Report.

3. Department members will indicate on the Arrest Report:

a. the disposition of the vehicle (e.g., towed, impounded, seized), and

b. the vehicle descriptors including the year, make, model, license plate number, and VIN, when available.

4. A request for a tow will be canceled if the arrestee is released on bail unless the vehicle is being held for investigation, being seized, impounded under a Municipal Code of Chicago (MCC), or held pursuant to 625 ILCS 5/4-203, which provides for a six-hour impoundment of a vehicle when a driver is arrested for violation of 625 ILCS 11-501 (Driving while under the influence of alcohol, other drug, or combination of both).

a. It is the *district station supervisor's* responsibility to ensure that the Vehicle Tow Report is still in the "Tow" basket prior to releasing the vehicle. A notation in the narrative section of the Vehicle Tow Report will be made that the vehicle was released to the arrestee and the tow was canceled. **The violation must be listed on the tow report.**

b. The *district station supervisor* will notify the OEMC dispatcher to cancel the tow request with S&S or its authorized towing agent. The S & S towing number and R.D. number, if applicable, will be given to the OEMC dispatcher.

H. Abandoned Vehicles

1. When OEMC receives complaints or inquiries from members of the public relating to abandoned autos, OEMC will ask the caller for the license plate number or the VIN number, if available, to establish whether it is stolen. If:

a. the abandoned auto is reported stolen, OEMC will assign a district field unit to investigate further.

b. it is determined that the vehicle is abandoned or the caller has no vehicle information available, OEMC will transfer the caller to the "311" Non-Emergency City Service Request Telephone Number.

2. When responding to complaints (e.g. on view, beat community meetings, OEMC assignment, etc.) of abandoned autos, Department members will first establish if the abandoned auto is stolen. If the abandoned vehicle is:

a. stolen, prepare and submit the appropriate case reports and request a tow, if necessary, in accordance with the procedures established in the Department directive entitled "Vehicle Theft and Wanted Vehicle Procedures."

b. not stolen, members will complete a City Service Request (CPD-21.208) and submit the completed form to the community policing office.


© Chicago Police Department, October 2014

**NOTE:** The Department no longer handles abandoned autos. Members are not to complete a Vehicle Tow Report for abandoned autos. When it becomes necessary to remove an abandoned auto from the public way, a City Service Request will be completed as outlined in the Department directive entitled "Chicago Alternative Policing Strategy (CAPS)." Members will still be responsible for ascertaining if the abandoned auto is stolen and completing the appropriate case reports if it is established that the abandoned auto is indeed stolen.

I. Hazard Tows

Department members will classify an apparently abandoned vehicle as a hazard tow only if there is a clear and present danger to the safety of the community *or the vehicle is obstructing traffic flow other than a traffic crash*. When towing a vehicle as a hazard, Department members will follow the procedures established in Item IV-A of this directive.

J. Overnight parking prohibitions:

1. The Municipal Code of Chicago, 9-64-060, which prohibits overnight parking on designated streets will be strictly enforced. The City overnight parking ban along certain arterial routes becomes effective every year from 01 December through 01 April between the hours of 0300 and 0700 hours.

2. When assigned, Department members will first verify the license plates or VIN numbers to establish if the vehicles are reported stolen. If the vehicles are not reported stolen, the members will issue a Violation Notice citation to those vehicles in violation of the overnight parking ban within their respective districts.

3. *District station supervisor on the second watch will telephone* the office of the Chief, Bureau of Patrol, between 0700 and 0730 hours daily (except Saturdays, Sundays, and holidays) to report the number of Violation Notice citations issued during the previous first watch. The Monday report will include information for Saturday and Sunday activity. Whenever a holiday occurs, the report will be due on the first business day after the holiday.

4. The Chief, Bureau of Patrol, will designate a member of their staff to act as a liaison with S&S regarding towing operations. This member will call S&S prior to 0800 hours daily (except Saturday and Sunday) to receive the total number of tows.

5. The Crime Prevention and Information Center (CPIC) will notify the *district station supervisors* in each of the affected districts as to the locations where towing operations will be in effect.

K. Emergency snow tow procedures for designated snow routes will be enforced after more than two inches of snow has fallen as outlined in the Department directive entitled "Emergency Snow Plan Operations."

## V. TOW PROCEDURES AT O'HARE AND MIDWAY AIRPORTS

A. For vehicles that have a Vehicle Tow Report completed and the owner arrives on the scene prior to the lifting of the vehicle by the tow truck, the vehicle must be released to the owner, who must immediately move the vehicle.

B. If a tow report is completed by an S & S employee and the owner returns to the scene **before** the vehicle has been moved from the original location where it was parked, the driver must request an S & S supervisor to determine to release or tow the vehicle.

C. If a Vehicle Tow Report is completed by a Department member, and the owner returns to the scene **before** the vehicle has been moved from the original location where it was parked, the original requestor or their supervisor will make a determination to release or tow the vehicle.

(Items indicated by *italics/double underline* were revised.)


© Chicago Police Department, October 2014

Garry F. McCarthy
Superintendent of Police

14-088 RWN

**GLOSSARY TERMS:**

1. **Vehicle Towing** - The towing of vehicles involved in certain Chicago Municipal Code violations, such as, violation of tow signs, overnight parking ban and designated snow routes.

**ADDENDA:**

1. G07-03-01 - Vehicle Relocation Procedures


© Chicago Police Department, October 2014

docusign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 8CEBFB5C-E48D-89A5-81F0-2A430EB7AD38 | | Status: Completed |
| Subject: Verified Complaint for Deprivation of Civil Rights Pursuant to 42 U.S.C. § 1983 | | |
| Source Envelope: | | |
| Document Pages: 89 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Vlad V. Chirica |
| AutoNav: Enabled | | 203 N. La Salle Street, Suite 2100 |
| EnvelopeId Stamping: Enabled | | Chicago, IL 60601 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | vlad@chirica.law |
| | | IP Address: 198.161.143.30 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>8/17/2026 5:47:15 AM | Holder: Vlad V. Chirica<br>vlad@chirica.law | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Christopher T. Kula<br>christopher.kula11@gmail.com<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Drawn on Device<br>Using IP Address: 2600:387:f:6a14::9<br>Signed using mobile | Sent: 8/17/2026 5:49:32 AM<br>Viewed: 8/17/2026 5:54:48 AM<br>Signed: 8/17/2026 5:55:06 AM |

**Electronic Record and Signature Disclosure:**
Not Offered via Docusign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/17/2026 5:49:32 AM |
| Certified Delivered | Security Checked | 8/17/2026 5:54:48 AM |
| Signing Complete | Security Checked | 8/17/2026 5:55:06 AM |
| Completed | Security Checked | 8/17/2026 5:55:06 AM |

| Payment Events | Status | Timestamps |
|---|---|---|